# THE UNITED STATES COURT FOR THE DISTRICT OF COLUMBIA
## (Civil Division)

| | |
|---|---|
| Kay Sieverding , et al | |
| *Plaintifsf,* | Case No. 1:05CV01672 |
| v | (RMU) |
| American Bar Association, et al | |
| *Defendants.* | |

# PLAINTIFFS' CONSOLIDATED OBJECTION AND MOTION
## FOR SUMMARY JUDGMENT

This is the plaintiffs' consolidated objection to defendants' motion to dismiss and the plaintiffs' motion for summary judgment in sum certain amount of $15 million plus interest at the rate of 12% from 03/01/04

Jurisdiction is based on 28 USC 1391(b) 2 or 3, RICO, the APA and Rule 60(b)(3). The defendants are based in New Jersey, California, Kansas, Washington D.C. and Colorado. So, therefore, 1391 (a) is not applicable. Plaintiffs moved from Colorado to Wisconsin in July 2002. After that, they tried to get the city to remedy the perjury of Wendy Schulenburg, to correct the police records, and to void the restraining order. This was done by interstate carrier; mail, FEDEX, telephone, etc. The letter from the city manager refusing remedy was sent to plaintiffs in Wisconsin. (See attached.) It was after the move to Wisconsin that plaintiffs sold their house for $100,000 less than appraised value and their lot for $75,000 less. After they moved, Sieverdings were not allowed to

1

safely return to the city that had been their home for 10 years, or in the case of David

Sieverding, for 43 years.

This 05-CV-1672 litigation includes the misconduct in the 02-CV-1950 litigation

that was directed by O'Brien Butler, Lloyds of London and the American Bar

Association as shown in the bills presented to the plaintiffs following the award of legal

fees at the conclusion of that case. There was less than two hours of meetings in 02-cv-

1950 and that preceded the effective complaint. From the time the effective complaint

was submitted until the final disposition of the case, the litigation was conducted through

Interstate carrier. Much of the writing and strategy was done in Wisconsin and

Washington DC.

Under 1392(b)(2) only a substantial portion of the acts and omissions need to be

in the District of Columbia. Facts 1-79 are from the District of Columbia as causal factors

in the Steamboat Springs events, the litigation conduct was directed from DC and the

Internet defamation is broadcast into DC.

As discussed in 05-cv-1283 Section Two (30 pages), the ABA and the other

defendants refused to stipulate to the facts and there were no adverse consequences. If

there are no consequences for refusing to stipulate to the facts, however, when defendants

to refuse to stipulate to any facts, why would any defendant stipulate to anything?

The American Bar Association filed a "motion to dismiss with prejudice" but did

not cite a legal basis for either dismissal or dismissal with prejudice. Then, they

conspired with the court and other defendants to deny plaintiffs the Summary Judgment

hearing and evidence review guaranteed by Rule 56. The cases that the ABA quoted did

not say what the ABA said that the cases said. The ABA implied that the ABA would

2

never be liable outside of contract. That disagrees with the whole theory of negligence and the Restatement of Torts. No court has the power to the American Bar Association immunity.

The 02-cv-1950 defendants refused to respond to interrogatories and asked to have requests unsupported by law treated as motions violating Rule 7 and they violated Rule 54. Their bill showed that they asked the local district attorneys office to refuse to provide a statement of probably cause even though they kept the criminal harassment case open for six-months before withdrawing. The criminal accusations are still published on the Internet via the Steamboat Pilot web site. This violates common law dating back to the time of Roman citizens as discussed in Acts 16 and the Magna Carta. It violates the Fifth, Sixth and Fourteenth Amendments, the privileges and immunities clause, the Colorado Constitution and Colorado Revised Statute (see complaint).

Between 05-cv-1283 and 05-cv-1672, defendants filed ten documents. Not one of them asserted any inconvenience associated with being in Washington instead of Denver. This is because the Colorado facts are now undisputable. The only reason the defendants want the case to be tried in Colorado is because the Colorado Court has shown its willingness to violate laws and procedures to protect the defendants. This includes the Rules of Civil Procedure, the privileges and immunities clause and 42, USC 1985. The plaintiffs cannot reasonably be forced to go back to a court that dismissed them and violated basic law and due process. By their actions to grant the bars immunity, the Colorado Courts deprived the Sieverdings of their Fourteenth Amendments rights.

Even if the Colorado Court assigned a new judge, plaintiffs would not trust the management of the Colorado Court because Judge Richard P. Matsch was supposed to

3

handle all 1983 cases and it was a departure from standard procedure to replace him with Judge Nottingham halfway through the case. Judge Nottingham was not chosen by lottery, as the court is supposed to do, but the decision was somehow related to his already having ruled plaintiffs' claim that Kevin Bennett threatened to shoot one of Thom Earnst's small children if Thom Earnst were to buy the Sieverding lot and build on it and one of their young children wandered next door onto his land. Judge Nottingham said that this was frivolous. (insert Y).

Equity requires an impartial court and the District of Colorado that it is incapable of being impartial. Therefore the District of Columbia is obligated to accept jurisdiction.

The Colorado case, University of Denver v. Whitlock, lists indicators of liability. Plaintiffs took that list and made a table from them. The table matched up the indicators with ABA's acts and omissions and indicates their liability (see Attachment 1)

The ABA showed its bad faith again by claiming that a Rule 60(B)(3) motion can be brought only in the original court. The notes from the hearings (see Cornell University web site) says specifically that a Rule 60(B)(3) action is best in a non-rendering court:

"This rule does not limit the power of a court to entertain an independent action to relieve a party from judgment, order, or proceeding ... The other procedure is by a new or independent action to obtain relief from a judgment, which action may or may not be begun in the court which rendered the judgment ..."

It is one thing for pro se plaintiffs to misunderstand a point of law. It is another thing for the ABA to misrepresent the law.

The ABA publishes rules for litigation conduct which require stipulations to the facts and disclosure of applicable law. The notes to Rule 11 and the Rules of Professional Conduct also require disclosure of applicable law. This is to promote a

decision on the merits and because these rules were not followed, there was no decision on the merits.

When they filed 02-CV-1950 plaintiffs counted on the ABA to keep the litigation above board, but they didn't. The ABA saw the defendants assert government and lawyer immunity for intentional torts and crimes but kept silent. The ABA saw Rule 41 being used for claims preclusion even though the preceding lawsuits were not served and no defensive filings were made. Plaintiffs quoted the U.S. Supreme Court in Semtek v Lockheed, which said that Rule 41 does not cause claims preclusion and that a dismissal with prejudice does not apply beyond that court. Plaintiffs cited that case but even after that the ABA and the other defendants ratified using Rule 41 for claims preclusion.

Plaintiffs have quoted United States Court 2002 Swierkiewicz v Sorema to the ABA and the 02-CV-1950 defendants at least ten times, but they continue to advocate using Rule 8 as a basis for dismissal. Furthermore, although they claim to not be able to understand anything that the plaintiffs write, then never identified a particular point of sentence that they didn't understand. Defense lawyer Brougham misquoted Morrell v Department of Social Services (United States Supreme Court) to claim that a local government could never be liable even when the tortuous conduct is a matter of policy as discussed in the complaint. The ABA knows that local governments are liable for discriminatory policies and that the plaintiffs' facts proved that.

The city manager wrote a letter to the Sieverdings in November 2001 cc the City Council and the City Attorney. This letter made the city's actions policy.

Even in the Report and Recommendation, Magistrate Schlatter claimed that prosecutors and district attorneys could never be liable. Plaintiff quoted the Supreme

Court to them about press conferences and other acts after dismissal of a criminal complaint but the defense just pretended otherwise.

Similarly, plaintiffs gathered multiple case citations affirming that lawyers can be liable in tort but the defense just ignores them relying on Magistrate Schlatter as a legal reference even when contradicted by Dan Dobbs, *The Law of Torts,* the BNA, and multiple appellate court decisions.

Similarly, the Denver court decided to ignore Time v. Firestone the USC case about selective reporting of a civil case.

Plaintiffs aren't lawyers but they can read and quote. Time after time they did so about subjects including tolling, continuing nuisances, republication of fraudulent statements, aiding and abetting, etc., and repeatedly their citations were ignored. Plaintiffs discussed this with an attorney they met on a long plane flight, and she said she couldn't believe what she was hearing. She confirmed the Sieverding's points were settled law that she learned in law school eight years before.

The ABA shows its bad faith again in claiming that a dismissal caused by threat of jail could be voluntary. That's like saying sex at knifepoint is voluntary.

When the 02-CV-1950 record was confused by the defendants' deceitful motions to dismiss and the violations of the rules of evidence, plaintiffs concentrated on motions for partial summary judgment as a way to build their case. It was the ABA that violated Rule 7 and Canon 1 by sending a letter to Judge Nottingham asking that the summary judgment process be suspended. Their request that he send messages through his clerk violated Canon 3. Defendant Oliphant followed that quoting the ABA about the

6

"posturing in this case" despite the plaintiffs' motion that the rules should be followed exactly as written. The other defendants then boycotted plaintiffs' motion practice.

Section Two of Plaintiffs' 05-cv-1283 complaint contains 30 pages of examples of unauthorized, discriminatory rule making. Plaintiffs don't understand the basis for the ABA's assertion that there is no penalty for failure to respond to plaintiffs' statements of undisputed fact. They don't give a legal authority. Because plaintiffs are pro se, wrote about events from personal knowledge and verified their pleadings under penalty of perjury, Moore's Federal Procedure said that these pleadings are all affidavits. The United State Supreme Court said in St. Mary's Honor Center that a party who does not respond to a motion for summary judgment with an affidavit will suffer. Case after case says that a party cannot defeat a motion for summary judgment by refusing to respond. This is also supported by the chapter titled, "Alternatives to Proof" in James Publishing *"Preparation for Trial in Federal Court."*

All of the statements in plaintiffs' 02-CV-1950 effective Complaint (facts 2 to 419 in 05-cv-1672) were resubmitted at least three times labeled as "undisputed facts." Most were supported by additional detail as well as by motions to verify, motions for summary judgment and motions to recognize as judicial truths and the 750 page document package.

How can the defendants claim that they can boycott a case for years and still retain a right to dispute the facts?

If responding with vague answers and boycotting an action are allowed legal strategies, then plaintiffs, in general, can never win. This would be consistent with the role that Lloyds of London assumed in paying for and co-directing the 02-cv-1950

7

litigation that would allow an unregulated, foreign, secret organization to undo established American law.

Facts 1 and 420 to 423 are supported by the undisputed facts in 05-cv-1283 and then jurisdiction under 1392 (b)(2) requires that only a substantial portion of the events be performed in Washington DC. A very substantial portion of these facts and omission did occur in Washington DC including; 1) the ABA and O'Brien, Butler, McConihe & Schaefer, LLP, both of Washington DC, directed 02-cv-1950 litigation misconduct, 2) The ABA's successful lobbying to deny citizens police protection from dangerous and unprincipled lawyers operating under the "Bad Man Model" as described by Associate Supreme Court Justice, Oliver Wendell Holmes, Jr., 3) the US Judiciaries failure to set up clear and accessible remedies for judicial misconduct, 4) the successful plan to jail Kay Sieverding and threaten David Sieverding with the express stated purpose of stopping 05-cv-1283 and 05-cv-1672. This is obstruction of justice as defined 42 USC Section 1985 and violates the privileges and immunities clause, 5) the ABA and the other 01-cv-1950 defendants in September 2005 initiated collection actions against the Sieverdings in State of Wisconsin Court system. This violates due process because Rule 54 safe litigation guards were ignored. The attorney's fees were levied illegally while the case was before the Tenth Circuit Court of Appeals. There was no oral hearing. No statutory basis was cited as required. These are activities that violated the Rules of Professional Conduct. Fees were awarded without evidence and the Court and the defendants boycotted plaintiff motions regarding the fees, 6) misleading and defamatory articles about the events in 1999 to 2000 and the 02-cv-1950 litigation are broadcast into Washington DC via the Internet by the 02-cv-1950 defendants. These articles have attached advertisements with

toll free numbers accessible from Washington DC, The city of Steamboat Springs also subsidizes tourist air traffic, tourist entertainment and tourist marketing efforts from the East Coast because sales taxes on the hospitality industry account for much of the City's tax revenue. Defendants including Kevin Bennett, Kathy O'Connell and Kevin Brenner rely on tourists and second homebuyers for much of their income. The World Companies branch, the Steamboat Pilot, and its publisher Suzanne Schlicht are heavily reliant on tourist income since Steamboat Springs has little primary industry. The Wall Street Journal said that a similar newspaper in Mammoth California, also serving the ski industry and second homes, was highly profitable. P. Elizabeth Wittemyer was motivated to act illegally in her role as prosecutor by her husband's commercial and residential real estate business, which listed one piece of property, a ski resort, for twenty million dollars. She held the harassment charges open for six months without probable cause and put on a press conference to try Kay Sieverding in the court of public opinion when she dropped the charges. The world company that broadcasts the articles from Kansas shows its intended jurisdiction in its name. Because the ABA is located in Washington DC, if 1391 (b) (2) is somehow lacking, then 1391 (b) (3) is applicable. Congress's intent was to ensure the availability of a just forum. Plaintiffs chose DC as is their right by statute because the plaintiffs choose the forum, not defendants. The Rules are always to be interpreted to advance equity. 28 USC 1391 assumes and equitable situation.

The ABA violated Canon 3 when it asked the District of Colorado to suspend the Summary Judgment process and relay messages through the clerks and the defendant's bill show that the Court acted on their request. The ABA showed bad faith by boasting that they got a Federal Judge to violate 28 USC 1985 and Canon 1.

This entire action can also be pursued entirely under RICO and RICO expands jurisdiction.

"A cause of action is a form of property. A plaintiff may bring an action under RICO for interference with another lawsuit. Great expense, delay and inconvenience are sufficient pleadings of injury for proper RICO standing" Federal Procedure Lawyers Edition Section 10:158

Putting Kay Sieverding in jail added to the expense, delay and inconvenience, thus making RICO ever the more applicable.

"When a court is called upon to exercise its equitable powers, it is axiomatic that it may provide whatever relief is necessary and proper to do complete justice under the circumstances between the parties. If a public interest is involved, equitable powers assume an even broader and more flexible character than when only private concerns are at stake. " USC Will Fanann 1991 EDNY

Currently, the ABA is all-powerful, but loosing just this one case could drive it to abruptly change policies about regulation of the legal industry.

Plaintiffs claims that the attorney regulation counsel doesn't protect the public is also supported by the recent letter, attached, saying that they could not discipline a lawyer for abuse of process, defamation, obstruction of justice, and improper publications about a pending lawsuit.

A similar situation happened in Minnesota which also has a private bar association. There plaintiffs complained that the Faegre and Benson attorney wrote to the presiding judge, Tunheim, and asked the judge to call him to discuss the case. Since denial of honest services is a crime, plaintiffs interpreted this as an attempted crime. However, the Minnesota regulation counsel wrote that it was not sanctionable. This contradicts the Rules of Professional Conduct. <attach letter>

This 05-CV-1672 is tolled because plaintiffs' previous filings were not decided on the merits including 05-CV-3766 in Northern Illinois, which was dismissed after ex parte collusion. Attorney Christopher Beale of Faegre and Benson confirmed the ex parte collusion when he discussed it in a filing in the United States Court for the District of Colorado. The plaintiffs' claims were always appealed or refiled in less than 30 days. So, the Federal tolling/slate saving law applies.

The 05-cv-1672 action is also tolled by the Tenth Circuit appeal Standard Oil of California v United States as cited in 05-cv-1283. In that case the Supreme Court tolled a case that went into a 60(b)(3) action.

Plaintiffs believe that the 05-CV-1672 complaint is a prima-facie case in the undisputed sum certain amount of $15 million plus 12% interest from 03/01/04. The plaintiffs think that their 02-CV-1950 complaint was also a prima-facie case. If the court would tell plaintiffs whether any legal requirements are missing, plaintiffs believe they can supply them from their reservoir of 02-CV-1950 disputed facts. This approach will conserve judicial resources.

By their actions to grant the bars immunity, the Colorado Courts deprived the Sieverdings of their Fourteenth Amendments rights.

The defendants Washington DC acts and omissions include the jailing of Kay Sieverding and the threat to jail David Sieverding. The ABA and other defendants filed collection actions in violation of the procedure required by Rule 54.

The plaintiffs and the ABA disagree over whether the Administrative Procedures Act (APA) applies to the situation. Plaintiffs found a quote in West Law saying that the APA applies to adjudication.

The ABA expands the meaning of 551(1)(b). Plaintiffs believe that the APA is applicable to this situation because federal government employees made a decision to do substantial unauthorized rule making. In their website, Rule Making describes itself as an administrative agency. Therefore, unauthorized departure is also administrative. The decision to depart was made in private without plaintiffs' presence and without making them aware of the departures. Therefore, it was not on the judicial record. This distinguishes is from the ordinary Rule 60(b) action involving only new evidence or question of law fairly presented. This is consistent with the intent of Congress to provide citizens with equitable hearing. It was the acts of United States employees as well as the acts of the defense council which caused plaintiffs damages to increase through years of expense and delay because of the misconduct in the 02-cv-1950 litigation. Since the United States government was a proximate cause of this, the United States government is mandated to help the plaintiffs recover their rights. This use of the APA will help make up for the failure of the Rules to provide remedies for the failures of Canons 1 and 3 (ex parte communication through the clerk). Again the defendants' bad faith is shown by their effort to interfere with the presentation of the plaintiffs' case. They interfered with their pro se litigation by incarcerating Kay Sieverding to keep her for the UW Law Library, the Internet, her husband, her computer, the Sieverding law library and notes. They interfered with Sieverdings' efforts to hire a lawyer years ago by establishing a policy in the industry that lawyers should deny services to potential plaintiffs seeking to sue other lawyers. The ABA members Anthony Lettunich and Randall Klauzer even went so far as to threaten Sieverdings' previous lawyer, Bill Hibbard. Now, the ABA and CBA want to deny the Sieverdings of legal assistance through the APA.

Verification: The plaintiffs hereby declare under penalty of perjury that to the best of their knowledge and belief everything included in this document, and all other documents filed with this and all other courts is true and correct.


Kay Sieverding

Thomas "Tom" Sieverding

Edward "Ed" Sieverding

## THE UNITED STATES COURT FOR THE DISTRICT OF COLUMBIA
### (Civil Division)

|  |  |
|---|---|
| Kay Sieverding , et al | |
| *Plaintifsf,* | Case No. 1:05CV01672 |
| v | (RMU) |
| American Bar Association, et al | |
| *Defendants.* | |

## <u>ORDER</u>

The plaintiffs have established their prima facie case in the sum certain amount of $15 million plus interest at the rate of 12% from 04/01/2004. Defendants are therefore ordered to make payment to plaintiffs.

SO ORDERED,

DATE:

_____
RICARDO M. URBINA
United States District Judge

# APPENDIX 1

Table of Markers of Liability listed by Colorado Supreme Court in University of Denver
v. Whitlock compared to Bars acts and omissions:

| Marker of liability | Basis for Bar Association liability |
| --- | --- |
| Risk Involved | None for bar associations, substantial for plaintiffs |
| Forseeability | Predicted by McGee Commission –"can't get a lawyer to sue a lawyer" (1983); Comments Justice Burger |
| Social Utility of Actor's Conduct | Plaintiffs engaged in every day life. Defendants social utility would not have been compromised by caring about unrepresented parties |
| Magnitude of Burden Against Injury or Harm | All that bar associations had to do was write a few articles, mention attorney torts in their regular speeches |
| Contemporary Standards | To protect, to warn |
| Whether reasonable persons would recognize a duty | Informal surveys of the public always recognize bar association duty. CBA membership includes essentially all lawyers active in Colorado. Bar associations lobbied to not have government agency saying industry "self-regulating". "Self-regulating" implies duty. |
| Competing individual, public, and social interests in the facts of each case | No legitimate attorney interests would be sacrificed by advocating, "sue lawyer tortfeasors". Legitimate attorneys would have a more fair playing field if not competing against unscrupulous attorneys. |
| Negligent failure to act v. negligent affirmative action. | Bar associations advocated government regulation be minimized. ABA allowed its web site and periodicals be used to advocate refusal of service. CBA attorney referral categories do not include pursuing attorneys in tort. ABA/CLE seminars do not educate about suing lawyers. Publications regarding physician and accountant liability in tort but not lawyer liability in tort. |
| Active misconduct working positive injury-misfeasance v. failure to take steps to protect them from harm. | Informal agreement not to advocate suing lawyers, watering down the rules of professional conduct |
| Did defendant make the situation worse | Advocated watering down the rules of professional conduct. ABA web site and articles advocated refusal of service to some members of the public |
| Did defendant create new risk of harm? | Apparently there was more suing lawyers before rules of professional conduct watered down in 1983 |
| Did defendant at least make no worse? | Failed to comply with minimal recommendations by McGee Commission |
| Test of fairness under contemporary standards? | In Illinois lawyers are disbarred for failure to report attorney misconduct and the standard for knowledge is lower. In Colorado under watered down knowledge rules, reporting is essentially voluntary a shown by conduct of defense attorneys |
| Role of defendant—common | CBA and ABA describe themselves as state and national bar |

| carrier, innkeeper, possessor of land, employee, parent, hospital | associations and imply exclusivity of their positions. ABA says it sets the standards on attorney ethics but does not acknowledge that standards are voluntary. ABA assumed rule of "upholding the honor of the profession of law" |
| --- | --- |
| Whether plaintiff dependant on defendant | Public is dependant on ABA and CBA for important role. Bar associations say industry is self regulating |
| Did defendant assume a duty? Induce reliance? | They assumed a duty by their public representations. The volume of seminars and publications on attorney misconduct makes it seem that the public is protected in general. General public doesn't understand you can't get a lawyer to sue a lawyer. |
| Did defendant create a peril? | Legal profession acting without fear of tort or civil lawsuit from either government (like SEC) or public |
| Did defendant change the nature of an already existing risk? | Attorney regulation watered down with 1983 rules of professional conduct and immunity of judges |
| Were risks of injury foreseeable? | Yes. Clark Commission, Chief Justice Burger, and McGee Commission warned of risk to public |
| Did defendant voluntarily undertake more extensive duty? | Yes. They could have just been "net working" organizations without assuming "self-regulation" of industry. |
| Was there affirmative action by defendant? | ABA approves CLE seminars, which don't advocate lawyers suing lawyers for attorney torts. ABA president annual speech urges continued non regulation and doesn't mention deterrence by tort |
| What is the context of a proper goal? | Use of court system and Internet. Distribution of information at public courthouses and libraries. |
| Is there an overall policy in the public interest? | Use tort system as designed for remedy and deterrence. Current bar association policies designed with lawyers interest not public interest |
| Was injured party capable of protecting their interest in the situation? | No, family could not have protected themselves against unscrupulous lawyers in conspiracy. |
| Did injured party demand decreased regulation? | No. Nor did anyone else other than the bar associations |
| Did society's perception of the most beneficial allocation of rights and responsibilities in the relationship change? | Society is looking for protection. In 1981, Chief Justice Burger quoted article on low public perception of attorneys. |
| Would a different allocation of responsibility produce a repressive or inhospitable environment? | No. In fact, honest lawyers would have less unfair competition if dishonest lawyers were sued away. Justice system would be improved if fewer dishonest lawyers. |
| Is there a historical history of greater protection? | Before rules of professional conduct changed in 1983. More regulation in other countries. More regulation in other U.S. states. |
| Did the injured party expect the defendant to protect them? | Yes |
| Were there any written | Bar association web sites, references to state attorney discipline |

| | |
|---|---|
| documents that would suggest that regulation or protection existed? | agencies make them seem more effective than they are. |
| Were there comparable regulations that were enforced? | Other professionals regularly sued by lawyers for comparable torts |
| Was there any reason to depend on the defendant for evaluation of a safety issue? | ABA reports on attorney complaints. Extensive meetings and publications on attorneys' responsibility to clients. ABA says it "sets the standard" and that government regulation is not needed. |
| How active was defendant's supervision in similar situations? | CBA and ABA publish on responsibility of accounts to non-clients but not on responsibility of lawyers to non-clients. ABA rang alarm regarding judges and bribes. (undisputed fact 273) Prestigious ABA members say that "the NYSE can't be a terribly effective regulator of itself when it governs its own members" (WSJ 10/17/03 P.c1) |
| Was there a delegation of a non-delegable power? | Yes, to the state Court system and to the ABA and the CBA |
| Convenience of administration? | Easy for the bar associations to make speeches, write articles advocating lawyers suing lawyers for torts against non-clients. In 1/2003, family suggested ABA institute FAQ on attorney torts and a use group on attorney torts on its web site but they didn't even though inexpensive. |
| Capacity of the parties to bear the loss? | Plaintiffs' lives and finances severely negatively impacted. Bar associations can bear loss. |
| Moral blame attached to the wrong doer | Bar associations and their members benefited financially by their acts and omissions allowing attorney torts against non-clients. |
| Availability, cost, and prevalence of insurance for the risk involved? | Legal acts and omissions and general liability insurance available. Canada requires attorneys purchase errors and omissions insurance and the price is affordable. |
| Did the defendant have control of third parties? | The profit motivation of the tort system is strong if the CBA and ABA unleash it by endorsing the concept of suing lawyers for intentional torts against non-clients. The CBA and ABA could have set up web site to discuss complaints. The CBA could have earlier released names of censored lawyers. The CBA could list lawyers taking tort cases for attorney misconduct in its referral service. CBA could make the reporting requirements stronger. |
| Was there a duty to exercise control of third parties? | Yes, the bar associations assumed a duty, if not full control, then allowing access to remedy and deterrent. |
| Did the actor create a situation of peril to the other (as a result of which the actor is under a duty to act to prevent harm)? | CBA allowed city attorney to be a section chairman. If they had advertised that they were considering this and did the public have doubts about him, the family would have reported his allowing the politician to convert the road to private use in 1992 and ongoing. |
| Did the actor commit to the performance of an undertaking, assuming a duty of reasonable care for the protection of the other? | ABA chose to declare itself the creator of attorney standards of behavior. ABA published article on local government corruption but didn't discuss role of city attorney. ABA 1 sponsors conferences and publications on attorney ethics that don't include discussion of tort remedy. |

17

| | |
|---|---|
| Would action have been effective, easy and commanded by every social and moral consideration? | Yes, it would be easy to announce that lawyers should sue lawyers when they commit torts. |
| Does there need to be a policy of preventing future injuries? | Yes |
| Are there facts, which make the negligent failure to act really other characterization of negligent actions? | Volume of speeches, articles, and seminars sponsored by the ABA and CBA. |
| Did any sort of safety council address the risks? | McGee Commission acknowledged risk and made recommendations which ABA and CBA ignored. Although 20 years passed, no new commission. CBA has an ethics committee but it chooses to ignore citizens' hurt by attorney torts. |
| Was injured party aware of risk of accident? | No, there was no way for the plaintiffs to be aware even thought they regularly read news publications such as Time and Wall Street Journal |
| Was injured party in possession of expertise, which would protect them from danger? | No |
| Did injured party knowingly place themselves in peril? | No |
| Was perilous activity a distinct choice of activity made by injured party? | No |
| Were rules of conduct promulgated by the defendant? | Yes |
| Was there enough potential control to give rise to the liability to third parties? | Yes |

**COLORADO SUPREME COURT**
**ATTORNEY REGULATION COUNSEL**

Regulation Counsel
John S. Gleason

Chief Deputy Regulation Counsel
Nancy L. Cohen

Deputy Regulation Counsel
James C. Coyle

Assistant
Regulation Counsel

Stephen R. Fatzinger
Lisa E. Frankel
Luain T. Hensel
Kim E. Ikeler
Cynthia D. Mares
Charles E. Mortimer, Jr.
Matthew A. Samuelson
April M. Seekamp
Louise Culberson-Smith
James S. Sudler
Douglas S. Timmerman



Attorneys' Fund for Client Protection
Unauthorized Practice of Law

September 14, 2005

Kay Sieverding
Clear Creek County Jail
P.O. Box 518
Georgetown, CO 80444

Re: Request for investigation of Christopher P. Beall, #2005-2839

Dear Ms. Sieverding:

We have completed our review of your request for investigation on the above-referenced attorney. On September 12, 2005, we received your letter asking us to sanction Mr. Beall "for abuse of process and defamation and obstruction of justice and improper publications about a pending lawsuit."

For this office to discipline an attorney, we must prove the attorney's misconduct by clear and convincing evidence. The information you provided does not demonstrate evidence that Mr. Beall acted unethically. Whether Mr. Beall or any other person engaged in conduct that amounts to abuse of process or defamation are issues that must be decided through the civil courts. The letter you provided did not demonstrate any evidence that Mr. Beall engaged in any conduct that would be considered obstruction of justice in violation of the Colorado Revised Statutes. Additionally, the judge presiding over United States District Court for the District of Colorado case number 02-CV-1950 should decide whether any of the extra-judicial statements made by Mr. Beall or anyone affiliated with that action were improper in light of orders entered in that case. If Mr. Beall or any other lawyer made statements in violation of a specific order of the court, you may bring that issue back to this office for further consideration.

For the above reasons, this office has determined that the information you provided does not set forth facts, which if proven, would constitute grounds for the imposition of discipline by the offices of the Supreme Court of Colorado. Therefore, we are closing this matter and will take no further action on your request.

Thank you for your cooperation and willingness to bring this matter to our

Kay Sieverding
Re: Request for investigation of Christopher P. Beall, #2005-2839
September 14, 2005
Page 2


attention. Your involvement in the attorney disciplinary process is a vital part of the Colorado Supreme Court's efforts to ensure that attorneys comply with the Rules of Professional Conduct.

Sincerely,

Matthew A. Samuelson
Assistant Regulation Counsel

MAS/rsl

cc:    Christopher P. Beall, Esq. (w/ attachments)

**STATE OF WISCONSIN**          **CIRCUIT COURT**          **DANE COUNTY**          For Official Use Only

Kay Sieverding et al vs. Hall & Evans et al

**Notice of Entry of
Foreign Judgment**

Case No.: 2005FJ000026

DAVID SIEVERDING
641 BASSWOOD AVE
VERONA WI   53593

A Foreign Judgment was entered on 09-21-2005 as follows:

**In favor of (creditor):**                                          **Creditor's attorney:**

City of Steam Boat Springs Co
c/o McConnell, et al
4700 S Syracuse St #200
Denver  CO   80237

Kevin Bennett
c/o McConnell, et al
4700 S Syracuse St #200
Denver  CO   80237

Ken Brenner
c/o McConnell, et al
4700 S Syracuse St #200
Denver  CO   80237

Kathy Connell
c/o McConnell, et al
4700 S Syracuse St #200
Denver  CO   80237

James Engleken
c/o McConnell, et al
4700 S Syracuse St #200
Denver  CO   80237

Art Fiebing
c/o McConnell, et al
4700 S Syracuse St #200
Denver  CO   80237

Sandy Fiebing
c/o McConnell, et al
4700 S Syracuse St #200
Denver  CO   80237

Daniel Foote
c/o McConnell, et al
4700 S Syracuse St #200
Denver  CO   80237

JD Hays
c/o McConnell, et al
4700 S Syracuse St #200
Denver  CO   80237

Paul Hughes
c/o McConnell, et al
4700 S Syracuse St #200
Denver  CO   80237

Anthony Lettunich
c/o McConnell, et al
4700 S Syracuse St #200
Denver  CO   80237

Wendie Schulenburg
AKA WENDIE ROONEY
c/o McConnell, et al
4700 S Syracuse St #200
Denver  CO   80237

| STATE OF WISCONSIN | CIRCUIT COURT | DANE COUNTY | For Official Use Only |

**Kay Sieverding et al vs. Hall & Evans et al**

**Notice of Entry of
Foreign Judgment**

Case No.: 2005FJ000026

DAVID SIEVERDING
641 BASSWOOD AVE
VERONA  WI  53593

A Foreign Judgment was entered on 09-21-2005 as follows:

**In favor of (creditor):**

American Bar Association
c/o McConnell, et al
4700 S Syracuse St #200
Denver  CO  80237

**Creditor's attorney:**

**Against (debtor):**

Kay Sieverding
641 Basswood Ave
Verona  WI  53593

David Sieverding
641 Basswood Ave
Verona  WI  53593

**Debtor's attorney:**

| | |
|---|---|
| Amount of Judgment | 10000.00 |
| Witness Fee | 0.00 |
| Attorney Fee | 0.00 |
| Service | 0.00 |
| Docketing Fee | 0.00 |
| Other | 0.00 |
| Filing Fee | 0.00 |
| Interest | 0.00 |

**Total Judgment & Costs**          **$10000.00**

Comments:
US District Court for the District of Colorado Case # 02-N-1950 (OES)
NO EXECUTIONS FOR 15 DAYS

Docketing Date: 09-21-2005

Date notice mailed: 09-22-2005

Docketing Time: 01:46 pm

BY THE COURT:

_____
Court Official

September 22, 2005
_____
Date

**Distribution:**
Court Original
Kay Sieverding
David Sieverding
American Bar Association

CV-419(CCAP) 9/00 Notice of Entry of Foreign Judgment

§ 806.24(3)(b), Wisconsin Statutes

This form may not be modified. It may be supplemented with additional material.

For Official Use Only

**STATE OF WISCONSIN**        **CIRCUIT COURT**        **DANE COUNTY**

Kay Sieverding et al vs. Hall & Evans et al

**Notice of Entry of Foreign Judgment**

Case No.: 2005FJ000026

Melinda Sherman
c/o McConnell, et al
4700 S Syracuse St #200
Denver CO 80237

Arianthe Stettner
c/o McConnell, et al
4700 S Syracuse St #200
Denver CO 80237

Paul Strong
c/o McConnell, et al
4700 S Syracuse St #200
Denver CO 80237

James Weber
c/o McConnell, et al
4700 S Syracuse St #200
Denver CO 80237

**Against (debtor):**

Kay Sieverding
641 Basswood Ave
Verona WI 53593

David Sieverding
641 Basswood Ave
Verona WI 53593

**Debtor's attorney:**

| | | |
|---|---:|---|
| Amount of Judgment | 11196.00 | Comments: |
| Witness Fee | 0.00 | US District Court for the District of Colorado Case #02-N-1950 (OES) |
| Attorney Fee | 0.00 | NO EXECUTIONS FOR 15 DAYS |
| Service | 0.00 | |
| Docketing Fee | 0.00 | |
| Other | 0.00 | |
| Filing Fee | 0.00 | |
| Interest | 0.00 | |
| **Total Judgment & Costs** | **$11196.00** | |

Docketing Date: 09-21-2005

Date notice mailed: 09-22-2005

Docketing Time: 01:46 pm

BY THE COURT:

_____
Court Official

September 22, 2005
_____
Date

**Distribution:**

| | | | |
|---|---|---|---|
| Court Original | | | |
| Kay Sieverding | David Sieverding | City of Steam Boat Springs Co | Kevin Bennett |
| Ken Brenner | Kathy Connell | James Engleken | Art Fiebing |
| Sandy Fiebing | Daniel Foote | JD Hays | Paul Hughes |
| Anthony Lettunich | Wendie Schulenburg | Melinda Sherman | Arianthe Stettner |
| Paul Strong | James Weber | | |