IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SIEVERDING, et al,                          )
                                            )
                Plaintiffs,                 )        Case No.:05-CV-01672
                                            )        (RMU)
        v.                                  )
                                            )
AMERICAN BAR ASSOCIATION, et al.,           )
                                            )
                Defendants.                 )
                                            )

BRIEF IN SUPPORT OF PLAINTIFFS MOTIONS FOR SUMMARY
JUDGMENT AND TO ADMIT FACTS.

The replacement of an associate with a senior partner shows the weakness of the

defendant's case. Defendants may not be aware that renowned lawyer David Boies lost a

case to a pro se landscaper who didn't even go to college. The procedures passed into law

by Congress are designed to insure an equitable result to citizens whose facts support

relief even if the defense council has expensive suits and personal connections. As long

as the judge is impartial, the procedure is designed to lead to a decision on the merits,

with Rule 60 (b) (3) as a correction mechanism.

Defendants too late motion for an expansion of time is ridiculous. Rule 6 is meant

for illness and funerals, hurricanes and fire, not to subvert Rules 36 and 56 and to

substitute hand waving and winking for a decision on the merits based on stipulations of

fact meticulously compared to established law. The lower court cases cited have no

factual overlap with 05-cv-01672. Unlike those cases, Sieverdings used the procedure

developed by professional committees and made law by Congress, Rule 60 (b) (3) and

the factually undisputed, related action 05-cv-01283 to reverse Judge Nottingham's and

Magistrate's Schlatter's corrupt attempts to protect the defendants that they actively

colluded with.

District of Colorado case 02-cv-1950 states recognized causes of action; first

amendment retaliation, intentional interference with economic advantage, RICO. The

motions to dismiss for failure to state a claim are bogus. Furthermore, yet another letter to

the Steamboat Springs Assistant District Attorney defendant Kerry Saint James asking

for the probable cause for the year 2000-2001 criminal prosecution of Kay Sieverding

has, once again, been boycotted. The Assistant District Attorney refuses to state the

probable cause or to acknowledge that there was none. Even so, codefendant, the World

Company, continues to broadcast the baseless criminal accusations.

As far as the defendant's venue defense goes:

"the doctrine of foreign non-conveniens presupposes that there exists at least two
forums in which the defendant is amenable to service of process and in which plaintiffs
may bring the action. A federal court should not decline jurisdiction if it is the only court
in which the action could be maintained and before dismissing an action it should assure
that a more appropriate forum offering an adequate remedy is available. A case should
not be dismissed if a new action would be barred by the statute of limitations or **if the
remedy available in a more convenient forum is inadequate or uncertain…** the
plaintiff's choice of forum should rarely be disturbed. Thus the plaintiff's choice of
forum should be respected as long as no harassment is intended, and in order to obtain a
dismissal, a defendant must establish that he has been oppressed or vexed to a degree out
of all proportion to the plaintiff's convenience" American Jurisprudence 32 b Section
2355 to 2356.

Thus, the District of Columbia cannot dismiss on the basis of venue. The

defendants did not try to claim that Washington DC was inconvenient for them. They did

not deny that the ABA is based in Washington DC and that acts and omission came from

Washington DC as related to all of the 02-cv-1950 litigation misconduct. They did not

deny that they solicited business in Washington DC. They tried to lie and say that

2

everything happened in Colorado, but that is, of course, impossible since the ABA does not have an office in Colorado and did not physically appear there, the defamatory articles are broadcast from Kansas, and the defendants all colluded together to subvert the legal process in 02-cv-1950 and the Sieverdings fled to Wisconsin in July 2001.

All of the other forums are prejudiced. In Colorado, the president of the Colorado Bar Association cheered as Sieverding was chained and shackled for asserting that an injunction must comply with Rule 65 and that she has the same right to sue as "white citizens" under 42 USC 1981.

Now, it turns out that for five years the Colorado Attorney Regulation Council, as discussed below, has denied its statutory mandate to investigate obstruction of justice, furthermore, the CBA ratified an underling speaking for the attorney regulation council even though, in a 1950 case with the CBA, it was determined that an underling cannot represent the attorney regulation council. The CBA knew about the particular problem with Matt Samuelson of the Colorado Attorney Regulation Council since January 2003.

The action should not be transferred to Illinois because it is undisputed, that the defense counsel had ex parte communication with the court and because the Federal Court for the District of Northern Illinois dismissed on the basis of broke prisoner law even though the plaintiffs were free at the time of filing and paid $250.

The ABA's influence in DC is at least balanced by the Court's tradition of equity and as a forum for national interests.

The defendants also argued that the plaintiffs' only recourse was to the Supreme Court, however, the Supreme Court does not take questions of mixed fact and law such as this. Congress expressly created Rule 60 (b) (3) to pave the way for an action such as 05-

cv-1672 and specifically intended, as per the notes quoted earlier, that it be available as an independent action in a non-rendering court. The defendants pled that a Rule 60 (b) (3) action was not when appellate review has been applied. Plaintiffs found a Supreme Court case that said otherwise, argued that the defense bills and the defense letters were not in the record for appellate review, argued that the appellate process does not offer an evidentiary process like Rule 60 (b) (3), argued the plain language of Rule 60 (b) (3), argued that the defense relied on a fraudulent Magistrates Report and Recommendation and pointed out that the defense counsel lied in their reply, boycotted Sieverdings appellant motion practice, and convinced the appeals court not to read the plaintiff's reply brief. An additional argument is: "The dismissal of an appeal means that the case is to be treated as if an appeal had not been taken" American Jurisprudence 32 section 433 quoting Newman v Moyers 253 US 18264 LAB 849 40 S. ct 478. Furthermore: "Federal Rules of Evidence Rule 404 B anticipates and expressly authorizes admission of evidence of other crimes, wrongs or acts for the purpose of proving motive, opportunity, intent, operation plan... knowledge... telling the existence of a common scheme or plan embracing two or more crimes so interrelated that the proof of one can establish the other" American Jurisprudence 32B section 112. Thus the facts at the beginning and end of the 05-cv-01672 complaint and the 05-cv-01283 complaint regarding the criminal litigation misconduct in Colorado case 02-cv-1950 must be admitted.

In addition, not only did the defendants cite obscure, unpublished cases without quoting them, when plaintiffs requested copies of those cases, the defendants refused to supply them. This shows both their bad faith and their desperation.

As far as their pleas to dismiss based on the so-called injunction, the Department of Justice Civil Manual 215 quotes various Supreme Court cases that specifically prohibit this court from interpreting Judge Nottingham's order as a Mandamus.

As previously discussed, the District of Columbia has jurisdiction over this action because the other defendants acted in conspiracy with the Washington D.C. based ABA to deny the proper course of law as defined by the Federal Rules of Civil Procedure in litigation of the referenced District of Colorado 02-CV-1950 case, because the Washington D.C. based law firm of O'Brien, Butler, McConihe and Schaeffer advised the Colorado defendants on strategies to obstruct justice in 02-CV-1950, and because all of the acts and omissions since July 2001 were interstate events including the majority of the 02-CV-1950 litigation. The ABA is located in Washington D.C., the plaintiffs live in Wisconsin, and the other defendants are located in Kansas, California, New Jersey, and Colorado, so diversity is preserved.

All of the facts must be admitted because:

1)      All facts in a motion to admit must be admitted unless the other party serves a written answer specifically denying the matter setting forth the reasons why the party cannot truthfully admit or deny the matter. (See Rule 36.)

2)      Motions to admit can be made at any time. Facts 2-419 were subject to a motion to admit while in the 10th Circuit and the defense attorneys gave no specific reason not to admit them.

3)      In the 02-CV-1950 forum facts 2-419 were included in the Sieverdings' motions for summary judgment and were not opposed.

4)    Facts 1-423 were included in plaintiffs' motion for summary judgment
(11) and were not opposed.

5)    Facts 1, 420-423 were supported by the more detailed allegations in
related case 05-CV-01283 none of which were disputed when plaintiffs' applied for
summary judgment.

6)    The Sieverdings verified their pleadings under penalty of perjury and
wrote from personal experience. Thus their pleadings are affidavits.

7)    None of the defendants pled that the Sieverdings had perjured themselves
or made any fraudulent statements. Rule 9 (b) requires that a dispute of the facts be made
with particularity.

8)    The defendants could have disputed facts in conjunction with their motion
to dismiss but did not. Federal Rules of Civil Procedure 12(g) says "A party who makes
a motion under this rule may join with it any other motions herein provided for and then
available to any party. If a party makes a motion under this rule but omits there from any
defense or objection then available to the party which this rule permits to be raised by
motion, the party shall not thereafter make a motion based on the defense or objection so
omitted."

9)    Plaintiffs' motion for summary judgment included new information not
included by the pleadings. This information was not excluded by the court nor did the
defendants object to its inclusion. This information included: a) the undisputable facts of
02-CV-01283, b) a letter from ABA in-house counsel Patricia Larson to Colorado Judge
Edward Nottingham asking to be relieved of the obligation to reply to plaintiffs'
02-CV-1950 motion for summary judgment and asking him to relay messages through his

clerk in violation of Canon III to her direct dial phone number, c) a letter from Colorado

Attorney William Hibbard indicating that he understood plaintiffs' 02-CV-1950

complaint and thought plaintiffs' theories about the ABA were "interesting", d) a table

showing that based on most of the factors listed by the Colorado Supreme Court in U of

Denver v. Whitlock the ABA had a "duty to care" about the plaintiffs and the public and

e) a letter from a staff attorney at the Colorado Attorney Regulation Counsel, Matt

Samuelson, to Kay Sieverding and the most outspoken 02-CV-1950 defense attorney

Christopher Beall of Faegre and Benson LLP. Samuelson's letter stated his intention that

his organization would not investigate Sieverdings' complaints that Beall had advised his

client to print defamatory articles, described in the 05-CV-01283 Complaint, on the

Internet, that Beall had taken illegal acts to have Kay Sieverding imprisoned and David

Sieverding threatened unless they withdrew from 05-CV-01283, 05-CV-01672, and an

8th Circuit defamation case against Faegre and Benson and the World Company

05-CV-2428. The letter supports plaintiffs' preceding allegations that they had

repeatedly contacted the Colorado Attorney Regulation Counsel and asked the office to

prosecute attorney misconduct directed at them by defendants Wittemeyer, Klauzer and

Lettunich but the same Matt Samuelson told them that his organization would not

investigate but would only act on facts proven in an independent court. Since then,

Sieverding has discovered that Samuelson's non-investigation policy violates express

Colorado Revised Statutes which the Colorado Bar Association, ABA and the defense

counsel were aware of. Under the rules of professional conduct and note 3 to Rule 11,

the defense counsel were obligated to disclose to the pro se plaintiffs but did not, even

though their secrecy delayed one avenue to Kay Sieverding being relieved of defamatory

articles as discussed in 05-CV-01283 and an earlier release from her current illegal

imprisonment. The relevant Colorado Revised Statutes state:

"Request for Investigation Proceedings as provided in these rules shall be
commenced upon a request for investigation made by any person and directed to the
Regulation Counsel ... if the attorney in question is subject to the disciplinary jurisdiction
of the (Colorado) Supreme Court ... if there is an allegation made against the attorney in
question which, if proved, would constitute grounds for discipline ... Rule 251.12
alternatives to discipline are (not available when) ... the misconduct involves a serious
crime ... the misconduct resulted in ... actual injury (loss of money, legal rights or
valuable property rights) to a ... person, unless restitution is made a condition of
diversion ... the misconduct involves dishonesty, deceit, fraud or misrepresentation ...
The Regulation Counsel shall promptly serve upon the respondent ... a citation and a
copy of the complaint ... The citation shall require the respondent within twenty days ...
to file ... a written answer ... the respondent shall either admit or deny every material
allegation contained in the complaint or request that the allegation be set forth with
greater particularity. In addition, the respondent shall set forth in the answer any
affirmative defenses ... A meeting of the parties <u>must</u> be held ... The grievance
committee of the Supreme Court conducts the formal hearing and makes a report, which
sets forth its findings, conclusions ... evidence taken at civil action that an attorney has
been guilty of conduct justifying disbarment is admissible in disbarment proceedings ...
251.31(a) all records except the work product, deliberations and internal communications
... shall be available to the public ... no person acting as a representative of the supreme
court has any power or authority to express an opinion concerning the propriety or the
ethics of the conduct of any lawyer (p. 623 – Thus Matt Samuelson has acted improperly
for years in his communications to Sieverdings) ... As officers of the court, lawyers are
charged with obedience to the laws of (Colorado) and to the laws of the United States,
and intentional violation by them of these laws subjects them to the severest discipline ...
An attorney has a high duty as an officer of the court to never participate in any scheme
to obstruct the administration of justice or the judicial process ... Since a lawyer is an
officer of the court, the court cannot tolerate or allow fraud by a lawyer to go unpunished,
for to declare such acts to be unprofessional conduct would be to use the mildest of
language ... A most sacred duty is to maintain the integrity of the law profession by
disciplining lawyers who indulge in practices which are designed to perpetuate a fraud on
the court ... A lawyer who holds the position of district attorney, with the substantial
powers of that office, assumes responsibilities beyond those of other lawyers and must be
held to the highest standard of conduct ... The public has a right to expect that one who
engages in professional misconduct shall be disciplined appropriately ... In a disciplinary
proceeding, the court's primary duty is to protect the public and the legal profession from
unscrupulous lawyers ... Disciplinary proceedings ... (do not) bar ... criminal
proceedings ... Acts and conduct on the part of an attorney which establish that he is
incapable of being trusted ... coupled with acts of dishonesty and deceit ... should be
promptly and severely punished ... if ... not promptly and severely punished, the public
will not have reason to trust those lawyers who maintain the highest standards of the
profession ... a judge has a duty to report unprofessional conduct by an attorney to

Regulation Counsel pursuant to Canon III B 3 … ABA standards for imposing lawyer sanctions utilized to determine proper sanction in disciplinary hearing … The public has a right to expect that one who engages in such gregarious professional misconduct shall be disciplined appropriately … An attorney has a high duty as an officer of the court to never participate in any scheme to obstruct the administration of justice or the judicial process." *Colorado Revised Statutes 2001 Vol. 12 Chapter 19-20*

10)    The fact that Sieverding did not discover Chapter 19 of the CRS 2001 Vol. 12 until October 28, 2005 (because it was not convenient to her in Wisconsin), does not change the liability at the American and Colorado Bar Associations because they were both very aware of Sieverdings' complaints against Colorado lawyers since plaintiff served them in January 2003 and did not complain after Sieverdings reported that they had three times in 2001 and 2002 reported misconduct to the Attorney Regulation Counsel and every time Matt Samuelson had refused to investigate. The president of the Colorado Bar Association, Charles Turner, was present on 1/30/2003 in a discussion of Sieverding's complaints of extortion, abuse of process, first amendment retaliation, aiding and abetting by Steamboat lawyers, and the Sieverdings being repeatedly refused assistance by other Colorado lawyers. This callousness by the ABA and CBA is further evidenced by their knowledge and ratification of the illegal jailing of Kay Sieverding from 9/2/05 to present.

11)    Furthermore, Sieverding made many other claims about how the bars protected the Steamboat lawyers and thereby encouraged their misconduct. These included their campaigning against government regulation of lawyers, their endorsing denial of service by lawyers to those who might sue a lawyer, the failure of the bars to acknowledge on their web sites, publications, and seminars that lawyers can be sued in tort, the failure to follow the explicit recommendation of the McGee Commission to aggressively distribute information to the public about attorney misconduct, the failure of

9

the bars to respond to the problem identified by the McGee Commission that the public

"can't get a lawyer to sue a lawyer", and the watering down of the rules of professional

conduct so that lawyers can and do avoid reporting of obstruction of justice. For

instance, Sieverding previously named 200 lawyers who knew about their extortion, first

amendment retaliation, and abuse of process in 1999-2001 and who allowed and

condoned it by their inaction. This included Davis Graham and Stubbs a very large and

prestigious Colorado law firm. Virtually every lawyer in Steamboat Springs, Colorado

knows about the underlying events and not one intervened. It was analogous to

upstanding citizens ratifying by watching a lynching as was common before Rosa Parks

made her Stand.

12)    Furthermore, all of the defendants know that Matt Samuelson sabotaged

the Colorado Attorney Regulation Counsel from within despite the decision "Re Petition

of Colorado Bar Association 137 Colo 357, 325 P2d 932 (1958): No person acting as a

representative of the Supreme Court has any power or authority to express an opinion

concerning the propriety or the ethics of the conduct of any lawyer." *(Colorado Revised*

*Statutes 2001 Vol. 12 p 623)*

13)    The defendants are responsible for the unethical behavior of their lawyers

towards the plaintiffs. Sieverdings adequately documented it and the defense counsel

sent them copies of Sieverdings' filings.

14)    Plaintiffs previously motioned for summary judgment on their

05-CV-01672 pleadings. The ABA advocates that this motion should be ignored because

they motioned to dismiss.

10

15) Because plaintiffs submitted a motion to dismiss with an affidavit and extra material, the ABA's great influence does not allow it to be excluded from the procedure. The procedure is mandatory.

16) The plain language of the Rule is clear. It is a law not an option: "A party seeking to recover upon a claim may, <u>at any</u> time after the expiration of 20 days from the commencement of the action" (This <u>does not say</u> after a motion to dismiss is heard) "the judgment sought **shall be rendered forthwith** (means no delay) if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" (This does not say that the judge may exclude anything because the ABA requested) "... the court at the hearing ... <u>shall</u>" (Mandatory court duty not optional) "... ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted." (In this case the defense has chosen not to contest any of the facts) "... Supporting ... affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify ... when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, <u>must set forth specific facts</u> showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, <u>shall</u> be entered against the party."

17) As the Notes of the Advisory Committee on the 1946 Amendments to the Rules Published by Cornells Legal Information Institute shows (see attached): "This

11

amendment ... will normally operate to permit an earlier motion by the claimant than under the original rule where the phrase at any time after the pleading in answer thereto has been served operate (d) ... to prevent a claimant from moving for summary judgment ... until a formal answer has been filed ... the changes are in the interest of more expeditious litigation."

"Without argument a response shall ... indicate the extent to which the asserted facts recited in the motion are claimed to be false or in genuine dispute, citing the particular pages or paragraphs of any stipulations, admissions, interrogatory answers, depositions, documents, affidavits, or other materials supporting that contention and recite in separately numbered paragraphs any additional facts that preclude summary judgment citing the materials evidencing such facts. To the extent that a party does not timely comply ... in challenging an asserted fact, it may be deemed to have been admitted" ..."arguments supporting a party's contentions as to the controlling law or the evidence respecting asserted facts shall be submitted at the time (the defendants) files ... its response (to plaintiffs' motion for summary adjudication)." (Defendants are not to cause delay as a strategy.)

"... the judgment or determination may be entered as to all affected parties, not just those who have filed the motions or responses, when the court has concluded as the result of one motion that certain facts are not genuinely in dispute ..."

"... the court is directed to indicate the facts and legal basis of it ... summarily determines an ... issue ... a brief explanation is needed to inform the parties (and potentially an appellate court) what are the critical facts not in genuine dispute, on the basis of which summary adjudication is not appropriate."

12

18)    In 02-CV-1950 plaintiffs, being pro se, did not know that Judge Nottingham was required to summarize the undisputed facts. They weren't required to know everything. The defense and Magistrate Schlatter colluded to cheat them. That was not allowed and, therefore, the defendants are precluded from advancing new defenses. As predicted, the 10th Circuit could not understand the facts and thought it was about zoning. The defense made this even worse because they obstructed the plaintiffs attempts to correct the misrepresentations in the magistrate's recommendation, misrepresented the facts in their reply brief, boycotted plaintiffs motions in the 10th Circuit, refused to confer, and somehow convinced the 10th Circuit to refuse to read plaintiffs' reply brief. Defense Counsel Beall may have used his personal contacts at the 10th Circuit, where he was previously employed, or perhaps the 10th was blinded by their emotional need to protect the Colorado Bar Association and Colorado Judge Nottingham.

19)    As previously discussed, preceding filing 02-CV-1950, plaintiffs gathered document evidence to prove their allegations. Because Kay Sieverding completed a masters in city planning, worked in local government, and is generally a good researcher, she understood how to use the Freedom of Information Act to document her facts as they occurred. Even in 1995, when she filed a harassment claim against Bennett's son when he threatened her if she were to go on the street in front of her home behind where Bennetts had barricaded it, she had the presence of mind to document the situation. Since that was a government document she was able to supply a certified copy to the defendants in 2003 – which was admissible as federal evidence. She saved the original copy of defendant attorney Oliphant's letter claiming that his client's blockade and

13

conversion of the street and threatening Sieverdings' business. She submitted that in 2003 and Mr. Oliphant did not dispute it.

Sieverding knew instinctively that she should request that the City of Steamboat regulate itself and correct the misbehavior of its officers. It was not fun to go to the city council and request that they correct the errors, omissions, and crimes of its agents. But Sieverding learned that she could read a two page double spaced document in the public comment time and give a copy to the city clerk. As discussed in the complaint, she did this and wrote letters sending checks for investigations and photographs until the city could not dispute either her facts nor that the city policymakers were aware of them. She also carried a hidden tape recorder and sought out city officials.

The 9/6/00 hearing with County Judge Garrecht was very unpleasant and stressful. But Sieverding recognized that it was an opportunity to define the facts. So she cross-examined the witnesses for almost four hours. A lawyer who looked at the transcript said it was impossible for the Bennetts and Klauzer to expand their allegations after that. That is why defendant City Attorney Lettunich told his assistant to cease research on the facts. For instance, when her surveyor told her a planning board member had told him to relay a threat to Sieverding, she immediately wrote to the city attorney to complain.

It seemed the 02-CV-1950 defendants' strategy included getting many people to participate in their extortion and its cover up so that it would be harder to document. But Sieverding had the MIT trained data handling ability to document, catalogue and analyze.

20)    Sieverding carried these skills into the 02-CV-1950 litigation. Magistrate Schlatter planned to hurt Sieverding at the pre-reply hearing dated 1/30/03. Instead

14

Sieverding asked him about his beliefs regarding attorney immunity and he got so rattled he closed the hearing early. The reason the 02-CV-1950 defense counsel asked Magistrate Schlatter to suspend the local rules of conferencing is that they didn't want her to have the records of their emails because they kept getting rattled and making damaging admissions. For instance, the President of the Colorado Bar Association himself emailed Sieverding to "assume nothing". Defendant CIRSA insurance agent Dave Brougham emailed to Sieverding that he didn't want to see their "so-called evidence".

21)    When studying law previous to filing their 02-CV-1950 complaint, Sieverding read about an important case of perjury – per se. It was said to be legally significant because it involved an affidavit that a septic field was not under a barn when in fact it was (which is bad engineering). Sieverding has studied enough history to know how citizens have been tortured and murdered by local government officials. The legal significance of Sieverdings' case is not insignificant because they weren't physically murdered and tortured. It is legally significant because preceding the filing she could prove essentially everything including knowledge, motive conspiracy and intentional violations of constitutional rights.

22)    Legal authorities agree that filing a motion to dismiss is an extremely risky strategy because of the necessity to stipulate to the facts, unless there is an error on the face of the complaint. They wouldn't have tried this if Sieverdings had a lawyer. Because Sieverdings were pro se, the defense counsel thought they could cheat Sieverdings of all reimbursement for their claims, not just wheedle down the amount by going to a jury.

23)    Professional advancement was another reason for the 02-CV-1950 defense counsel to conduct the litigation in such a duplicitous fashion by convincing Judge Nottingham and Magistrate Schlatter to suspend the laws of civil procedure and the laws of evidence.  They must have boasted about their contact with bar management and anticipated the boost to their careers.

24)    The underlying defendants weren't in a good position to protest this strategy because they were vulnerable to criminal charges.  Many of them are still vulnerable to disbarment or other sanctions for attorney misconduct.  Even before Sieverdings left Steamboat, defendant former city counsel member James Engleken told Sieverding (when she sought him out at the grocery store where he worked while carrying a tape recorder in her purse), that Mr. Lettunich was extremely worried about being disbarred and the city manager and city planning services director were worried about their continued employability.

25)    In trying to cheat Sieverding of a defense on the merits, the defendants cheated themselves of an opportunity to contest the amount of the claims.

26)    They deserve the large punitive damage expense because of their extreme bad faith and malicious litigation conduct.

27)    If the ABA thinks it doesn't have a duty to care about the public because it is a private organization, then it shouldn't be trusted by the public to be considered a legal authority or to recommend judicial appointments.

28)    It is totally outrageous that the ABA and CBA advocate jailing citizens for filing lawsuits without paying one of their members.

16

29)    No other discipline or profession would, in the U.S. at least, advocate that citizens should be jailed for legal self-help.

30)    Under the principles of estoppel (see quotes from American Jurisprudence and Federal Procedure Lawyer's Edition) the defendants have lost their rights to dispute the facts.

31)    There is no need to burden Judge Urbina with documents. As explained in the Committee Notes on the Purposes of the Summary Judgment Rules Revision "The determination that a fact is not in genuine dispute is, when reviewed on appeal, treated as a question of law" … The standards … for determining whether a fact is genuinely in dispute are essentially those developed over time, culminating in <u>Celotex Corp. v. Catrett</u> 477 US 317 (1986) and <u>Anderson v. Liberty Lobby</u> 477 US 242 (1986) … this structure … provide(s) a framework enabling the court to discharge more effectively their responsibility in deciding whether such controversies exist. A primary benefit of summary adjudication is elimination of ultimately wasteful discovery … responses (to motions for summary adjudication) … <u>must provide a cross reference to the specific portions of any evidentiary material</u> relied upon to support a contention that a fact is or is not in genuine dispute; failure to do so will, under revised subdivision (e) relieve the court of the obligation to consider such materials …

Pertinent portions of evidentiary materials not previously filed <u>must</u> be attached to the … response … late filing may prejudice other parties …

The requirement that motions for summary adjudication contain cross-references to evidentiary materials and be accompanied by pertinent portions of such materials not previously filed is not, of course, applicable when the movant contends that there is no

17

admissible evidence to support a fact as to which another party has the burden of proof. In such situations, the motion should recite that there is no evidentiary support for that fact, and the opposing parties will have the obligation to cite and demonstrate in their responses the existence of such evidence." (Notes to Rule 56 attached)

32)    The defendants have the burden of proof that the 02-CV-1950 decision was on the merits. They have provided no evidence to prove that or to disprove plaintiffs' allegations that the magistrate violated the rules of evidence and misrepresented the facts and the evidence, that all of plaintiffs' motions were boycotted thereby depriving plaintiff of the required process, that the local rules were suspended, that plaintiffs' interrogatories were boycotted, that the defense attorneys lied to the 10th Circuit in their reply brief and stopped the 10th Circuit from reading plaintiffs' reply, that Judge Nottingham's dismissal denied the appellate court of the information it needed to make a just decision, that defendants boycotted plaintiffs' appellate motion practice, that the magistrate's act was violated, that the 02-CV-1950 magistrate and Judge Nottingham should have recused themselves as plaintiffs' motioned, that there was some unjustness in the switching of judges halfway through, that Judge Nottingham was not a random assignment as required, that the defense counsels sent secret letters to the magistrate, and that the defendants and the judge colluded to deny a fair trial. This is further supported by the document evidence that Faegre and Benson had ex parte collusion with Minnesota Federal Judge Tunheim and the strong evidence of collusion with the District of Northern California (provided by the boasting of Christopher Beall of Faegre and Benson).

33)    It is obvious that the ABA can have ex parte contact with any judge if they try hard enough. Nonetheless, in order for there to be a judgment on the merits the facts

18

must be established according to the rules of evidence by trier of fact and matched with the law. Otherwise it is not a judgment on the merits and is not claims preclusive; the action is tolled and the judgment can be contested under Rule 60.

34)    "A party may also file a separate cross motion for summary adjudication if there are other facts asserted to be not in genuine dispute on the basis of which it is entitled to a favorable determination as a matter of law." (Notes to Rule 65)

35)    Filing a cross motion for summary judgment that plaintiffs claim is barred by res judicata is what the defense would do if that were genuinely the case instead of a sham defense. That is the rigor demanded by the Federal Rules of Civil Procedure to which plaintiffs' are entitled as a matter of law. Digging up a few cases in which the Court ruled that other plaintiffs were barred by res judicata because they previously had a full-blown trial and a numbered reply with evidentiary hearings is not a legitimate defense to this case.

36)    Judge Urbina applied the procedure and standard for determining res judicata in <u>Polsby v. Thompson</u> 01-323 RMU. The laws of res judicata and the Federal Rules of Civil Procedure have not changed since 2002 when Judge Urbina ordered: "The defendant also argues that the court should dismiss the plaintiffs' claims because they are barred by res judicata and because this court does not have venue to consider the claims.

The defendant argues that the case should be dismissed on res judicata grounds but fails to state how relevant legal authorities applies to the facts of this case … The defendant also fails to detail the plaintiffs' present claims, and which claims are barred by which prior case. Consequently, this court hereby orders the defendant to remedy its deficient submission with a supplemental memorandum.

19

The court notes that in its renewed motion to dismiss the defendant incorporated by reference its earlier memorandum in its entirety, though many portions of it are irrelevant. This type of reference is not permitted. In its supplemental memorandum though, the defendant may refer to previously submitted exhibits.

The defendant's supplemental brief must address the following:

1)    On page five of its Renewed Motion to Dismiss, the defendant states "in both cases, judgments on the merits were reached." What legal authority from this circuit and what facts support the defendants' argument that Dr. Polsby's second case, dismissed on July 12, 1999, involved a judgment on the merits?

2)    Which of Dr. Polsby's claims are NOT precluded by Dr. Polsby's first case, as adjudicated by Judge Chasanow in March 1996? Which of these remaining claims are barred by Dr. Polsby's second case, as dismissed by Judge Kennedy in 1999?" (01-CV-00323 RMU Document 25 Filed 03/19/2002)

37)    By law, Sieverdings are entitled to the same due process as Maureen Polsby.

38)    The ABA's response that it could defer challenge of the facts is dishonest and dishonors the history of the organization. This follows their lie that a Rule 60 B(3) motion cannot be filed in a non-rendering court and their codefendant's lie that all the events happened in Colorado – a physical impossibility because many of the defendants are not in Colorado and the FAMILY moved to Wisconsin in July 2001 but the tortuous acts continued long distance.

20

39)    It is <u>impossible</u> that the defense counsel doesn't know: "A party is not required to file a response to a summary adjudication motion. The failure to make a timely response, however, may be deemed an admission of the asserted facts specified in the motion … If it contests an asserted fact specified in the motion either because it is false or at least in genuine dispute, the party must file a timely response that indicates the extent of disagreement with the movant's statement of the fact and provides reference to the evidentiary materials supporting its position. Failure to do so may result in the fact being deemed admitted for purposes of the pending action. As under Rule 36, if only a portion of an asserted fact (or the precise working of the fact) is denied, the responding party must indicate the nature of the disagreement." (See notes to Rule 65 attached)

40)    "Facts are admitted for purposes of Rule 56 not only as provided in Rule 36 but also if stated, acknowledged or conceded by a party in pleadings, motions or briefs … or a conference … a declaration under penalty of perjury … should be treated the same as a notarized affidavit." (See notes to Rule 65 attached)

41)    As previously discussed, the Sieverdings have over 500 pages of facts meeting this description. Many of these were brought to the defendants' attention when the plaintiffs submitted them as motions to recognize facts in the 10th Circuit.

42)    "Voluminous data should … be submitted by means of an affidavit summarizing the data and offering, if not previously provided, access to the underlying data." (See notes to Rule 65 attached) Plaintiffs did that. The defendants offered no data in any case involving the Sieverdings. Showing his animus, Magistrate Schlatter said on 1/30/03 that he would not tell plaintiffs how to enter their documents.

45)    Furthermore, the amount of the claim $15 million plus 12% accruing from 3/1/04 is unchanged by David Sieverding's coerced withdrawal because he assigned his interest to his wife and by their written 1982 prenuptial keep all their property in joint tenancy.

46)    All of the discussion submitted by plaintiffs in their reply to the ABA's strange response to their motion for summary judgment is also relevant. Plaintiffs don't know how the judge wants this situation handled so the remainder of this document is a cut and past of their 10/23

I declare under penalty of perjury that the foregoing is true and correct. Executed on 11/05/05.

Kay Sieverding
Clear Creek County Jail
PO Box 518
Georgetown, CO 80444

RECEIVED

NOV — 7 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT