**RECEIVED**

U.S. COURT DISTRICT OF COLUMBIA

AUG – 1 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

---------------------------------------------------------

|  |  |  |
|---|---|---|
| KAY SIEVERDING ET AL. | ) | CIVIL ACTION 05-CV-01283/ |
|  | ) | 05-cv-01672 (RMU) |
| V. | ) |  |
|  | ) |  |
| AMERICAN BAR ASSOCIATION ET AL. | ) |  |

_____}

PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER DISMISSING THE ACTIONS AND TO HEAR AND AWARD SUMMARY JUDGMENT TO PLAINTIFF ON THE BASIS OF PREVIOUS PLEADINGS AND AFFIDAVITS—Oral hearing requested.

1

| Table of Authorities | Page number |
|---|---|
| Colorado Revised Statutes Rules of Court Procedure Rule 41 | 9 |
| Colorado rule 56 d "Responsibility of the Court). Colorado Rule 38(a), | 10 |
| Colorado Revised Statutes Rules of Court Procedure Rule 60 b3 | 10 |
| DRETKE V. HALEY, 541 U.S | 5 |
| Edmond v. United States Postal Serv. Gen. Counsel, | 6 |
| El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 676 (D.C. Cir. 1996) | 6 |
| FED. R. CIV. P. 4(k)(2) | 11 |
| Federal Rules Civil Procedure 19(a) | 6 |
| GRUPO DATAFLUX, PETITIONER v. ATLAS GLOBAL GROUP | 5 |
| HISHON V. KING & SPALDING | 10 |
| LINK v. WABASH RAILROAD CO., 82 S. Ct. 1386, 370 U.S.) 626 06/25/1962) | 9 |
| Miller v. Carnation Co., 33 Colo. App. 62, 516 P.2d 661 (1973). | 7 |
| NEITZKE ET AL. v. WILLIAMS, 109 S. Ct. 1827, 490 U.S. 319) | 10 |
| Odilla Mutaka Mwani v. Osama Bin Laden and Afghanistan. U.S .Court of Appeals for District of Columbia. No. 04-5266, 417 F.3d 1, 2005.CDC.0000177, | 5,6 |
| QUACKENBUSH V. ALLSTATE INSURANCE CO., No. 95-244 (U.S. 06/03/1996) | 6 |
| Polsby v. Thompson | 16.17 |
| CircuitNo. 00-7188 348 U.S.App.D.C. 238, 274 F.3d 521, 2001.CDC.0000215 December 21, 2001 Second Amendment Foundation et al. v United States Conference of Mayors | 4,5 |
| SEMINOLE TRIBE OF FLORIDA V. FLORIDA, 517 U.S. 44 (U.S. 03/27/1996) | 12 |
| SEMTEK INT'L INC. V. LOCKHEED MARTIN CORP. (99-1551) 531 U.S. 497 (2001) | 7 |
| Sharp Bros. Contr. v. Westvaco Corp., 817 P.2d 547 (Colo. App. 1991). | 9 |
| U.S.C. Title 18 Part 1 Chapter 96 § 1964 . | 11 |
| U.S.C. Title 28 Ch 87 § 1391 | 4 |

Page Intentionally Left Blank

Venue generally (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." U.S.C. Title 28, Part IV, Chapter 87, § 1391.

Because the defendants reside in IL, DC, CA and N.J. there is no state in which all the defendants reside. Plaintiff resides in WI and the 02-1950 litigation was all long distance with no trial so there is no state where all the acts and omissions were committed. The ABA is based in D.C. so § 3 applies to set the action in D..C. U.S.C. Title 28 Chapter 1391 §2 also applies to give the D of Columbia has long arm jurisdiction in 05-01283 and 05-01672 because evidence shows that in 2003-2005, the malicious defense, RICO, abuse of process, obstruction of justice etc. originated and was guided from D.C. by Jeff Schaeffer, Kevin Kernan, and a Mr. Hammond who all were employed by an insurer who was liable for the $15 million plus interest undisputed in 02-1950, The ABA participated directly in the litigation misconduct, writing to Judge Nottingham and requesting ex parte conference and the special favor of refusing to hear plaintiffs' summary judgment motions and through acts of omission as did the U.S. Judiciary and both are based in D.C. The ABA had special responsibilities to intervene in the litigation misconduct because it authored the model code of professional conduct and the litigation code and represents that as an organization it is committed to those codes. R.D. Evans, Director of the ABA Washington D.C.

4

office ratified Patricia Larson's misconduct, which he was aware of. Lloyd's of London also participated in a conspiracy to deprive rights by paying for unrecorded ex parte conferences through an agent in Chicago.

The State of Colorado hired David Brougham through his employer Hall and Evans to cause the 02-1950 litigation to be terminated without a decision on the merits. The Colorado Attorney General and Colorado Insurance Commissioner conferred with David Brougham about this as did the director of the Colorado Bar Association and representatives of the ABA. There is prima facie evidence showing that all of the parties acted in conspiracy. This prima facie evidence includes the U.S. Judiciary RuleMaking because they refused to appear in this case after they were properly served and an appearance was due. The administrative branch of the U.S. Judiciary is aware that there was extensive ex parte unrecorded conferences in the related litigation but has refused to properly administer its departments so as to provide a remedy for citizens in such situations. Since they act as a conspiracy, jurisdiction on one is jurisdiction on all:

"Persons who enter the forum and engage in conspiratorial acts are deemed to "transact business" there "directly"; coconspirators who never enter the forum are deemed to "transact business" there "by an agent." ... "[T]he general rule ... that a plaintiff must make a prima facie showing of the pertinent jurisdictional facts" applies to conspiracy-based jurisdiction. ...To prevail on its jurisdictional theory...make a prima facie showing of civil conspiracy. Second Amendment Foundation et al. v U.S. Conference of Mayors

The Court cannot change the jurisdiction by dismissing defendants:

"...whether destruction or perfection of jurisdiction is at issue, the policy goal of minimizing litigation over jurisdiction is thwarted whenever a new exception to the time-of-filing rule is announced, arousing hopes of further new exceptions in the future. ...DRETKE V. HALEY,... We decline to endorse a new exception to a time-of-filing rule that has a pedigree of almost two centuries. Uncertainty regarding the question of jurisdiction is particularly undesirable, and collateral

litigation on the point particularly wasteful....our time-tested rule weighs heavily against the approval of any new deviation." GRUPO DATAFLUX, PETITIONER v. ATLAS GLOBAL GROUP, L. P.,

Under Rule 19(a), joinder of the defendants is required:

"A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties." Federal Rules of Civil Procedure 19(a)

The DC Court of appeals says plaintiff is entitled to an evidentiary hearing

and discovery if faced with a motion to dismiss for lack of personal jurisdiction.

"Certainly, "[a] plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery" El-Fadl v. Central Bank of Jordan, quoted in Second Amendment Foundation et al. v U.S. Conference of Mayors

Local Rules establishing obligation for conference on were ignored. There

was no meaningful conference between the parties although plaintiff attempted in

good faith.

To establish jurisdiction, only a prima facie showing of jurisdiction is

required.

"The court acknowledged that when ruling upon personal jurisdiction without an evidentiary hearing, a court ordinarily demands only a prima facie showing of jurisdiction by the plaintiff ....safeguard plaintiffs "when the adversary process has been halted ...In the absence of an evidentiary hearing, although the plaintiffs retain "the burden of proving personal jurisdiction, [they] can satisfy that burden with a prima facie showing." Edmond v. United States Postal Serv...Moreover, to establish a prima facie case, plaintiffs are not limited to evidence that meets the standards of admissibility required by the district court. Rather, they may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain." Odilla Mutaka Mwani v. Osama Bin Laden and Afghanistan.

The defendant has the burden of proof to show that there is another

adequate forum.

"The district court need not weigh any factors favoring dismissal, however, if no other forum to which the plaintiff may repair can grant the relief it may obtain in the forum it chose. See El-Fadl v. Cent. Bank of Jordan,...the defendant...has the burden of showing there is another forum adequate...TMR Energy Ltd. v. State Property Fund of Ukraine,

FED. R. CIV. P. 4(k)(2) permits the court to exercise personal jurisdiction.

'thus permits a federal court to exercise personal jurisdiction over a defendant (1) for a claim arising under federal law... (3) if the defendant is not subject to the jurisdiction of any single state court, (4) provided that the exercise of federal jurisdiction is consistent with the Constitution (and laws) of the United States...A defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. Naming a more appropriate state would amount to a consent to personal jurisdiction there (personal jurisdiction, unlike federal subject-matter jurisdiction, is waivable). If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)..., Odilla Mutaka Mwani v. Osama Bin Laden and Afghanistan.

The Court has a non-discretionary duty to hear the case because the

plaintiff showed that the Court has the legal ability hear the case.

"'If the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations, then the district court should take the plaintiff's factual allegations as true and determine whether they bring the case within any of the exceptions to immunity invoked by the plaintiff.'"...the plaintiffs have satisfied their burden of showing that the district court can properly exercise personal jurisdiction over those defendants" Odilla Mutaka Mwani v. Osama Bin Laden and Afghanistan.

"we have applied abstention principles to actions "at law" only to permit a federal court to enter a stay order that postpones adjudication of the dispute, not to dismiss the federal suit altogether.... superseded by statute ... the question presented in terms of the power of a federal court of equity to abstain from exercising its jurisdiction... Burford permits "a federal court sitting in equity," ...to dismiss a case only in extraordinary circumstances...... a federal court cannot...dismiss or remand an action when the relief sought is not discretionary...Because this was a damages action, we conclude that the District Court's remand order was an unwarranted application of the Burford doctrine." QUACKENBUSH V. ALLSTATE INSURANCE CO.,

Plaintiff's and defendant's state of residence do not bar jurisdiction in D.C.

("[The] plaintiff's residence in the forum State is not a separate requirement, and lack of residence will not defeat jurisdiction established on the basis of the defendant's contacts."... Odilla Mutaka Mwani v. Osama Bin Laden and Afghanistan

The overlap of facts and claims between this action and the 02-cv-1950

action does not cause claims preclusion or issue preclusion.

'The original connotation of an "on the merits" adjudication is one that actually "pass[es] directly on the substance of [a particular] claim" before the court...But over the years the meaning of the term "judgment on the merits" "has gradually undergone change"...and it has come to be applied to some judgments ....that do not pass upon the substantive merits of a claim and hence do not (in many jurisdictions) entail claim-preclusive effect... why the Restatement of Judgments has abandoned the use of the term–"because of its possibly misleading connotations..., it is no longer true that a judgment "on the merits" is necessarily a judgment entitled to claim-preclusive effect.... such a rule would arguably violate the jurisdictional limitation of the Rules Enabling Act: that the Rules "shall not abridge, enlarge or modify any substantive right,... the traditional rule is that expiration of the applicable statute of limitations merely bars the remedy and does not extinguish the substantive right, so that dismissal on that ground does not have claim-preclusive effect in other jurisdictions...DUPASSEUR V. ROCHEREAU [which stated that the case was a diversity case, applying state law under state procedure]... the State was allowed (indeed, required) to give a federal diversity judgment no more effect than it would accord one of its own judgments only because reference to state law was the federal rule that this Court deemed appropriate. In short, federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity... Court of ... Appeals erred in holding that the dismissal necessarily precluded the bringing of this action." SEMTEK INT'L INC. V. LOCKHEED MARTIN

Colorado Statute determines that 02-cv-1950 is not claims preclusive. (see DUPASSEUR V. ROCHEREAU)

"A dismissal based upon preliminary, subsidiary, technical, or jurisdictional grounds... does not operate as "res judicata.... § (b)(1) of this rule makes it clear that dismissals under C.R.C.P. 3(a), are without prejudice and do not operate as an adjudication on the merits; therefore the words "with prejudice" in an order of dismissal are a nullity and would in no way bar a subsequent action asserting the same claim for relief as set forth in the complaint. ...Level of prejudice contemplated by doctrine of laches not reached by permissive parties. ...the expense and inconvenience of further litigation, without more did not rise to the level of prejudice contemplated by the doctrine of laches....Where plaintiffs seek damages and subsequent injunctive relief, there is a right to a jury trial on the legal issues." Miller v. Carnation Co., C.R.S. Rules of Court Proc. Rule 41

Under Colorado Statute, the rule 60 b(3) independent action is timely:

"anytime within six months after the rendition of any judgment in such action".

Thus, 05-cv-01283 is not time barred because it was filed within 6 months of the

10th Circuit ruling. The Colorado statute says "any judgment", not "district court

judgment". An affidavit shows a procedural violation in the 10th Circuit.

The Rule 60 b(3) action also challenges the 10th Circuit Court of Appeals

decision. The 10th Circuit ruling did not meet the minimum ABA standards for an

appellate decision because both the district court and the appellate court decision

were unpublished and neither stated laws or facts. The 10th Circuit was prohibited

from dismissing the case because plaintiffs stated undisputed facts entitling them

to relief. The 10th Circuit was bound to consider the evidence of ex parte

collusion. If they had found that inadequate, plaintiff could have presented more

evidence of ex parte collusion.

Judge Nottingham was required to specify the facts that appear without

substantial controversy and render the summary judgment for plaintiff:

…. "make an order specifying the facts that appear without substantial
controversy" (Colorado rule 56 d "Responsibility of the Court). Colo Rule 38(a),

"The judgment sought shall be rendered forthwith if the pleadings, depositions,
answers to interrogatories, and admissions on file, together with the affidavits, if
any, show that there is no genuine issue as to any material fact and that the
moving party is entitled to a judgment as a matter of law". Colorado Rule 56.

In this case, not only was summary judgment not rendered either for or

against plaintiff, there was no statement of disputed or undisputed facts, no

explanation of why judgment for plaintiff was not given and the defense did not

file responsive pleadings to the plaintiffs' motions for summary judgment. There

9

was no discovery and the defense presented no affidavits disputing plaintiffs'

statements of fact. The Rules of Evidence codify rights for litigants that were

denied plaintiff due to an active conspiracy with overt acts involving the defense

counsel, the defendants (CBA director, etc.) and Court personnel.

Equitable Tolling Protects this Action (similar D.C. and Wisconsin laws exist)::

"Since Congress did not establish a statute of limitations or a body of tolling rules applicable to federal-court actions under 1983, the analogous state statute of limitations and the coordinate tolling rules are binding rules of law in most cases." BOARD OF REGENTS V. TOMANIO Pp. 483-486

Commencement of new action upon involuntary dismissal….a new action upon the same cause of action… within 90 days…after the termination of the original action…applicable to all actions…first commenced in a federal court…or any other state…C.R.S. 13-80-111

"Statute should be liberally interpreted; therefore, the term "a new action" should not be interpreted to mean only one new action." Sharp Bros. Contr. v. Westvaco Corp.,

"If any action or proceeding is begun within the period fixed by the applicable statute of limitations or the periods provided for in this article, then such action or proceeding may be prosecuted to final decision notwithstanding the fact that the period of limitation shall expire after the commencement and during the prosecution of such action or proceeding." C.R.S. 13-81-107

Plaintiffs' complaint states recognized causes of action a.) Injunctive relief

from continuing federal rights violations and threat of criminal prosecution b.)

Freedom of Information Act action c.) Relief from attorney bills of over $75,000

d.) Relief to pursue damages (in 05-01672) of over $75,000 based on intentional

interference with economic advantage of the amount due from 02-1950.

"Plaintiff's cause of action . . . was his property… it is of very great importance to everyone in this country that we do not establish the practice of throwing litigants out of court" dissenting opinion LINK v. WABASH RAILROAD CO

Because the complaint is property, plaintiff is entitled to civil remedies:

"Any person injured in his...property by reason of violation of §
1962...may sue...in any appropriate court"." U.S.C. Title18Part1 Ch 96 § 1964.

"A court may dismiss a complaint only if it is clear that no relief could be
granted upon any set of facts that could be proved" HISHON V. KING &
SPALDING

Thus, Judge Urbina cannot sua sponte dismiss the Federal Judiciary from

their Freedom of Information Act and Administrative Procedures Act obligations:

"Under Rule 12(b)(6), a plaintiff with an arguable claim ...and an
opportunity to amend the complaint before the motion is ruled upon... This
adversarial process also crystallizes the pertinent issues and facilitates appellate
review of a trial court dismissal by creating a more complete record of the case.,,,,
By contrast, the sua sponte dismissals.... involve no such procedural protections."
NEITZKE ET AL. v. WILLIAMS,

The U.S. Judiciary RuleMaking was served in compliance with Rule 4 and

did not appear or file a motion to dismiss. The acts and omissions of the U.S.

Judiciary Rule-Making establish jurisdiction in D.C.  Rulemaking should provide

an effective remedy to timely correct judicial violations of the rules of evidence

and judicial refusal to hear motions, clarifying when a complaint is "too long",

and providing timely intervention when there is prima facie evidence of

unrecorded ex parte conferences. These omissions were a causal factor of the 02-

1950 litigation misconduct.

Judge Urbina cannot legally contradict his rulings in other cases.  In Polsby

v. Thompson, he found significant: "the plaintiff alleged no facts, reason, or

motive to support her conspiracy theories". In this case, plaintiff supplied facts,

reason and motive to support conspiracy theories, as well as evidence in the form

of defense bills for ex parte conference calls. In the Polsby decision, Judge

Urbina cited as controlling an earlier case in which summary judgment was

granted against Polsby. He refers to a trial. In this case, summary judgment was not found against plaintiff and there was no trial. Judge Urbina is required to employ the same level of inquiry and standards as in his other cases, unless there is an overruling higher court authority.

The ABA's goal was to avoid additional case-law supporting attorney liability in tort and to develop case-law supporting the jailing of ordinary citizens for filing rule 60(b)3 actions. The ABA's litigation section published a report advising winning against pro se litigants by filing repeated motions for more definite statement and then getting an injunction against further pro se litigation. Not only does the ABA want to win 02-1950, they also want to reduce the potential effectiveness of pro se litigation so that people will have to hire their members and to give their members an advantage in litigation. The ABA claims immunity for its members for torts based on their status as advocates.

Defense motivation for avoiding an 02-1950 decision on the merits involved protecting lawyers' illegal competitive advantages and relieving insurance companies of similar claims involving deliberate internet defamation and obstruction of justice. There is prima facie evidence showing that motivation in 05-2122 where White and Case affirmed that the ABA believes that attorneys have immunity. Without "Shepardizing" and to justify a conspiracy to deprive rights through unlawful imprisonment, the ABA's D.C. Counsel cited a decades old Wisconsin district court case which was overruled by intervening Wisconsin Supreme Court and Appellate Court decisions, which plaintiff has served on the defendants on multiple occasions.

Colorado is properly a party because the Court is asked for injunctive relief from an on-going federal issue, which currently reduces plaintiff's constitutional liberties, reputation, and ability to earn an income. Injunctive relief from continuing federal-law violation is not barred by the 11th amendment.

"The doctrine of Ex parte Young …doctrine allows a suit against a state official to go forward where the suit seeks prospective injunctive relief in order to end a continuing federal-law violation." SEMINOLE TRIBE OF FLORIDA

The attached Nov. 2005 letter from the Colorado Commission on Judicial Discipline suggests that plaintiff pursue injunctive relief against CO Judge Garrecht. Because she lives in Wisconsin, she is entitled to do this in federal court under diversity. Plaintiff did not "sit on her rights" but timely and continuously pursued relief as shown by the prayer for relief in 02-1950:

"Sieverdings also request that the Court will immediately order the permanent restraining order on Kay Sieverding to be voided and the sealing of the bogus criminal records. Public correction and apology to be continuously printed on the CITY's web site for ten years". Last two sentences above signature 02-1950 complaint.

The District of Colorado Court refused a hearing on the injunctive relief prayer in 02-1950 after Brougham, acting as an agent for the State of CO, had over 25 unrecorded ex parte conferences. Brougham billed to discuss the case with the CO Attorney General. Hall and Evans was hired as an official CO state vender. Brougham's bills show his conferences about the defense strategy with the Colorado Attorney General, the Colorado Insurance Commissioner, and the Director of the Colorado Bar Association. (The CBA is a private entity without any public input but claims some sort of quasi government privilege so strong that the CO A.G. acts as a CBA agent).

The federal issue is on-going because the Jane Bennett injunction is still in place and prevented plaintiffs from attending the father's 35 year high school reunion this summer and visiting long- term friends who live in a beautiful resort destination where plaintiffs had lived for 10-24 years. The existence of the injunction is broadcast by the defendants on the Internet along with basis criminal accusations and affects the entire family's current social life, reputation, extended family relations, and earning ability and flexibility. Plaintiff is justifiably afraid of further criminal acts by the defendants.

Judge Urbina is asked to protect the plaintiff from defamation and jailing. Without Judge Urbina extending the shield of the U.S. Constitution to protect her, plaintiff still unprotected from defendants who have already committed multiple felonies against her, have millions and millions at stake not only from this but from precedent for similar lawsuits, and refuse to say that they do not plan new crimes against her. Plaintiff has a right to the protection of an evidentiary court. She cannot get that in Wisconsin because none of the defendants have residences or offices. She can't get it in Colorado because the court there dismissed her case with prejudice and she might be jailed at any time with out compliance with statutory procedure. (see affidavit). The 10th Circuit as a Court of Appeals cannot protect her as well as a District Court.

The 05-01283 action requests the same relief which was denied without hearing or reason in 02-1950 and suggested by the CO Commission on Judicial Discipline. 05-01283 us already filed and served, in progress, paid for, briefed, and ready for decision. Judge Urbina is obligated by his oath to adjudicate the

actions. He is somewhat familiar with the case and in the best position to adjudicate the action. The record should already contain enough to award summary judgment in plaintiff's favor.

The defendants had over one week with a draft and found no errors.

I declare under penalty of perjury that the forgoing is correct. Executed on July 30, 2006

Kay Sieverding, 641 Basswood Ave., Verona, WI 53593 phone 608 848 5721.

Certificate of Service

Service on the defendants through ECF and paper copies mailed on 7/29/06 to

_____Kay Sieverding

White and Case attn Carolyn Lamm and Frank Panolpouls
701 13th St NW
Washington DC 20005-3897

Daniel Moore
Colorado Office of Attorney General
1525 Sherman St 5th Floor
Denver, CO 20530

O'Brien Butler McConihe and Schaefer
Attn Jeffrey Schaefer
888 17th St NW
Washington DC 20006-3939

U.S. Judiciary attn civil process server
Thurgood Marshall Federal Building
One Columbus Circle NE
Washington DC 20544

U.S. Attorney attn civil process server
501 3rd St
Washington DC 20530

Attachments

Email conference from July 21

Receipts for 2nd and 3rd services on U.S. Judiciary by express mail 12/15/06

tracking number ED086025143 to Civil Process Server, Thurgood Marshall

Federal Bldg, One Columbus Circle, NE Washington DC 20544 and Civil Process

Server U.S. Attorney 501 3rd St Washington DC 20530 tracking number

ED 086052126 U.S.

C.)Motion to admit facts to 10th Circuit establishing need for district court to

protect plaintiff from criminal acts by defendants

D.) Receipt showing a defense attempt to  defraud the 10th Circuit in related

preceding appeal.

E.) Letter dated 12/28/05 from the Colorado Commission on Judicial Discipline

Executive Director Richard Wehmhoefer showing his agreement that plaintiff has

a basis for relief from the Routt County restraining order.

F.)  Undisputed request to defendants associates to cease fraudulent publishing

about the plaintiff on the Internet and pointing out criminal records and suspicious

financial acts of defendants and their Colorado insurance carrier.

*Att. A*

*certificate of conference*

From: Kay Sieverding <sieverding.kay@slides.com>
Subject: **revised draft motion for conference**
Date: July 21, 2006 9:51:42 AM CDT
To: LarsonP@staff.abanet.org
Cc: clamm@whitecase.com, fpanopoulos@whitecase.com, jschaefer@obmslaw.com,
aagmoore@yahoo.com, sieverding.david@slides.com

📎 1 Attachment, 157 KB ( Save ▼ )



drafturbina...c.pdf (157 KB)

Dear Defense counsel

This draft of the motion for reconsideration of dismissal of 05-cv-01283 and 05-01672 is a little better so please review this one instead of the one I emailed last night. I tracked down the equitable tolling statutes and added a table of authorities.

As discussed last night, I want to submit this as a motion for reconsideration and I want you to review it for fact and law so that I may have a more complete record for appellate review and to preserve our rights.

Please dispute any arguments, facts or laws by Tues the 24th, unless you call me otherwise. That gives you three working days plus the weekend.

Kay Sieverding

641 Basswood Ave
Verona, WI 53593
608 848 5721
fax 608 845 3201

*No Response received*

*Kay Sieverding*

*7/29/06*



(C)

AFFIDAVIIT

7/30/06

Appeal No 06-1039

IN THE UNITED STATES COURT OF APPEALS

FOR THE 10th CIRCUIT

Kay Sieverding, plaintiff, appellant                    )

                                                        )

v.                                                      )

                                                        )

Colorado Bar Association et al. , defendants, appellees  )

Appeal from order invalidating U.S.C. Title 28 section 1654 and

making it a crime punishable by jail to petition the courts without

hiring a lawyer.

---------------------------------------------------------------------------

Plaintiff's Motion to Admit Facts

1.)     (intentionally left blank).

2.)     It is customary practice for these defense counsel hired and

supervised by these defendants when litigating with this plaintiff to

have unrecorded ex parte conferences. Apparently they think that the

bar associations and law firms cannot defend themselves without

criminal collusion. This is admissible under  Rules of Evidence 406:

3.)    "Evidence of the habit of a person or the routine practice of an

organization, whether corroborated or not and regardless of the

presence of eyewitnesses, is relevant to prove that the conduct of the

person or organization on a particular occasion was in conformity

with the habit or routine practice.

4.)    It is supported by defense attorney bills showing that David

Brougham had over 25 unrecorded ex parte conferences, defense bills

from Faegre & Benson discussing ex parte conferences with the

District of Columbia, a letter from Faegre & Benson soliciting an

unrecorded ex parte conference call with Minnesota Federal Judge

Tunheim, a bill from Faegre & Benson for a meeting with Judge

Tunheim's former clerks, letters from defense counsel Patricia Larson

and attorney James B.F. Oliphant soliciting ex parte conferences with

Colorado Federal Judge Nottingham,  oral statements by Christopher

Beall that he had called every court plaintiff has appeared in and

orally requested dismissal, and bills by David Brougham for

reviewing three District of Colorado orders that he could only have

obtained through ex parte conference as two had not even been issued

when he billed to review them and one he could not have received

through the mail when he billed to review it.

5.)    "In the review of judgments in contempt, the supreme court goes no farther than to inquire if the court pronouncing sentence had jurisdiction of the parties and of the offense charged

6.)    Judge Nottingham did not have jurisdiction over legal acts by plaintiff.

7.)    Plaintiff was jailed for over 4 months without being accused of violating a federal or state law.

8.)    When Sieverding, from jail, filed a "motion for discovery to state number of statute for basis of so called injunction Sieverding accused of violating" (D. 740 filed 12/27/05), without hearing or recorded defendant response, Judge Nottingham declared that motion to be "frivolous".

9.)    The Supreme Court has ruled that there can be no duty to refrain from what is legal.

10.)    Jailing for violating a court order depends on the condition being established that there is a duty to refrain from the prohibited conduct, such duty cannot exist without a statute prohibiting the conduct

11.)    In her response brief, ABA counsel Patricia Larson asserts as evidence that all of plaintiff's motions were "frivolous". However, all

of the motions contained the only three requirements of a motion: a statement of what plaintiff wanted the court to do, a statement of the law she was relying on, and a statement of how or why the law applied to the factual situation.

12.)    "No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local district rules unless the alleged violator was furnished with actual notice of the violation before the noncompliance."

13.)    Criticism of plaintiff's motions is not ground for sanctions if they met the requirements of national and local rules, which they did.

14.)    "If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine the declarant as if under cross examination".

15.)    Thus, plaintiff is entitled to cross examine the ABA as to whether the hearsay that Patricia Larson repeated, that all of plaintiff's motions were frivolous, is true.

16.)    The defense counsel has not cited any applicable law or case supporting an injunction against fee-paid self-represented litigation.

17.)   Fee-paid self-represented litigation is protected by the Colorado and Wisconsin constitutions and the U.S. Judiciary Act and has been common law since the 13th century.

18.)   No evidence of any plaintiff's misconduct has been supplied to any court.

19.)   Patricia Larson, representing the ABA, has made no claim to the 10th Circuit that she ever thought that the March 2004 order against pro se litigation based on the same series of events was a legitimate order.  This is admitted under Rules of Evidence 801(2) a and c.

20.)   In order for an injunction to issue, there must be a bond provided by the party benefiting or an explicit court decision that no bond is necessary.  In the case of the injunction hereby appealed, there was no defense bond and no discussion of a defense bond. It is apparent to anyone who has passed the bar exam that there was no valid injunction.

21.)   In order for a valid injunction to issue, there must be a motion citing a law, an affidavit of irreparable harm, and a hearing.  If those conditions are not met, it is apparent to anyone who has passed the bar exam that there was no valid injunction.  In the case of the injunctions

5

hereby appealed, there were no motions, no affidavits of irreparable harm, and no hearing that complied with the required procedure.

22.)    In order for a valid injunction to issue, there must be a statement of what is restricted that does not incorporate a document and a statement of why it is issued.  Also, it is supposed to be a separate document and entered by the clerk as an injunction. If those conditions are not met, it is apparent to anyone who has passed the bar exam that there was no valid injunction.  In the case of the March 2004 order, the required format was not met, it was not a separate document, and it was not entered by the clerk as an injunction.

23.)    Anyone who has passed the bar exam knows that self-representation has been a common law right since the 13th Century and is explicitly incorporated into State Constitutions and the Judiciary Act of 1789.

24.)    Plaintiff was not accused of misconduct in the presence of any court.  In fact, Magistrate Schlatter had described her as eloquent and she was polite and friendly to him and assured him that she did not mean to be suspicious of him.

25.)    Judge Nottingham's contempt of court proceedings were the first time she ever met him.

26.)    When plaintiff was jailed at the oral request of the defense counsel, Mr. Beall fraudulently represented that she was not entitled to either a lawyer or an evidentiary hearing.

27.)    The witnesses against plaintiff, the defense counsel, were not sworn in as witnesses.

28.)    There is no license to commit crimes in court.

29.)    Plaintiff's interpretation of the clause in the March 2004 order against pro se litigation "based on the same series of events" as meaning "based only on the same series of events" was entirely reasonable and consistent with the laws of res judicata and estoppel.

30.)    The District of Colorado and the defense counsel did not have a right to retroactively change the injunction to mean, "based on related events" or "based on the same series of events plus intervening events".

31.)    Because the plaintiff was not allowed an evidentiary hearing to determine if her related lawsuits were "based only on the same series of events" and because she cited information not in her complaint and not available until after the case was dismissed, it must be presumed that plaintiff's related litigation did not conflict with the order against litigation "based on the same series of events".

32.) When she appealed the 02-1950 dismissal, David Brougham had emailed to plaintiff that she was not allowed to present the attorney bills because they were not in the record on appeal.

33.) The defendants hired two D.C. law firms to represent them in the related D.C. cases. Last week, plaintiff conferred with Patricia Larson, the D.C. law firms, and the Colorado Attorney General by email as to a motion she plans to file in the District of Columbia and asked them to respond by 7/24 if they had objections or needed more time to review the proposed motion. However, as of 7/28 they have not indicated that they believe it is illegal for plaintiff to file such a motion, or that she might be jailed for filing it

34.) The D.C. counsel, Patricia Larson, and Daniel Moore from the Colorado Attorney General's Office must not believe that there is a valid injunction, which prevents plaintiff from self-representation.

35.) A long time friend of plaintiff's has suggested to her that she should worry about the ABA and the defendants hiring a contract killer to kill her and/or her family. This man is in his mid 50's. He is a graduate of MIT. Plaintiff has known him since she was 17. He has a very responsible job. His father is a very successful lawyer. Plaintiffs circle of college friends always considered this man to be

"worldly" "astute" and "sophisticated". The defendants record in forcing plaintiff to move from Steamboat, defaming plaintiff, attacking her financially, threatening to shoot someone who wanted to buy her property, and having her put in jail based on fraudulent representations of law suggests that they are willing to engage in all sorts of crimes.

36.)   Plaintiff emailed to the defense counsel and asked whether they were planning to have her murdered, re-jailed, or to use other force to stop her presentment in court, and they refused to say that they did not plan to murder her or use new force to stop her presentment in court.

37.)   Even though the ABA knew that Kansas Federal Judge John Lungstrum was adjudicating Sieverding v. WorldWest LLP and that the outcome of that case could affect Sieverding v. ABA et al., since there were overlapping facts, the ABA hired Judge Lungstrum as a speaker in April 2006. Previously the ABA had never hired Judge Lungstrum.

38.)   Plaintiff was not allowed an opportunity to be heard as to the impropriety of her being jailed without an evidentiary hearing, a lawyer, or being accused of a crime as is required by Rules of Evidence 300 (e).

39.) The presumption is that plaintiff is competent to be a witness in court and no evidence has been offered in any court contravening that.

40.) The presumption is that plaintiff is innocent of all criminal conduct and no evidence has been offered in any court contravening that.

41.) Plaintiff has lived in Wisconsin since August of 2001. Since 02-1950 had no trial and was decided on the basis of written filings by plaintiff from Wisconsin and by defense counsel from Illinois and Colorado and ex parte conferences some of which were interstate, and the defense strategy was advised by Jeffrey Schaefer from D.C. who represented the insurer for the Newspaper and by a representative of Lloyd's of London in Chicago, who represented the reinsurer for Kevin Bennett and the City of Steamboat defendants, the 02-1950 litigation can be properly characterized as an interstate activity.

42.) In 02-1950, David Brougham knew that the case would be transferred to Judge Nottingham, and wrote to his clients about this, two days before the order appeared in the docket.

43.) In Jan 2006, Judge Nottingham at the request of the defense counsel issued an arrest warrant for plaintiff and the U.S. Marshals

came to her home in Wisconsin. However, under Rule 4 of the
Federal Rules of Criminal Procedure, he could only issue such a
warrant: "if the complaint or one or more affidavits ...established
probable cause that an offense has been committed."

44.)    Larson and Oliphant ignored the 10th Circuit's order to appear
in this matter but no warrant was issued to arrest them.

45.)    Neither the defense counsel nor Judge Nottingham had any
affidavits from anyone alleging any probable cause that plaintiff had
committed a criminal offense.

46.)    Under Rule 1 (b) the warrant was supposed to describe the
offense "charged in the complaint". However, there was no criminal
complaint and the warrant did not contain a description of an offense
charged.

47.)    The arrest warrant charged plaintiff with "failure to appear".
However, under Rule 40, such a charge can only be made if 18 U.S.C.
Sections 3141 to 3156 apply. Those all require a criminal complaint
with an affidavit that the accused committed a crime and do not
change the presumption of innocence.

48.)   At the oral request of the defense counsel, plaintiff was jailed without a preliminary hearing as required by Fed. Rules of Criminal Procedure Rule 5.1.

49.)   Under Federal Rules of Criminal Procedure 58.b.2, Judge Nottingham was required to tell plaintiff what she was charged of and the minimum and maximum penalties and that she had a right to retain counsel. He never did tell plaintiff what she was charged with or what the maximum sentence could be.  Also, he ratified the statement by defense counsel Christopher Beall that she was not entitled to a lawyer and was not entitled to an evidentiary hearing.

50.)   When plaintiff requested that Judge Nottingham appoint a lawyer for her, he refused.  When she requested a temporary release from jail to find a lawyer, he refused.  She told Judge Nottingham that the federal public defender's office had refused her service.  The defense counsel including Patricia Larson knew all this because it all went through ECF and was emailed to them.

51.)   Agents for all of the defendants asked to have related actions against them in Washington D.C. dismissed on the basis that an injunction prohibited plaintiff from self-representation.

52.)   Patricia Larson claimed (by inter-state carrier) to have a right to refuse civil service on the basis that plaintiff was enjoined from self-representation.

53.)   After some unrecorded ex parte conference calls and without motions, Magistrate Schlatter awarded over $100,000 of attorney bills to the defendants. He specifically ordered that plaintiff could not contest these bills.  When plaintiff filed a motion for clarification, Magistrate Schlatter did not treat it as such and the defendants supplied no clarification.  These attorney bills were never finalized. $10,000 was awarded to the ABA without even a bill. The defense counsel bills specify that they had a conference about the attorney bill award not being a final award and whether they should attempt to get a final award.  However, they decided just to collect the attorney bills without there being a final award. The defense, except Oliphant, jointly filed a notice of foreign judgment against plaintiff's husband and their joint assets.  This collection action was posted in the Wisconsin court system.  Plaintiff's neighbor in Wisconsin noticed that plaintiff was missing.  Because he had previously read defamatory statements by the defendants on the Internet and believed they must be true, he then looked up plaintiffs in the Wisconsin court

records and found the notice of foreign judgment. He then transmitted this information to many other Verona neighbors and the mayor, causing the plaintiff and her family further humiliation.

54.) The assertion of an attorney's lien in circumstances where the attorney has no statutory or legal foundation for a lien and, in fact, has only an uncertain claim to the fee on which the purported lien is founded violates the code of professional responsibility.

55.) On 09/6/05 after plaintiff was jailed at Mr. Beall's oral request, he and Patricia Larson had a long distance phone conversation for .2 hours on "status of contempt hearing".

56.) On 9/2/05, plaintiff pled not guilty to the charge of, without having a lawyer, filing a lawsuit based on the same series of events. Under Federal Rules of Criminal Procedure 58-4, the judge was required to advise her of her right to appeal her conviction.

57.) Even though Judge Nottingham allowed the defense counsel to allege probable cause without being under oath, as officers of the court they are still under penalty of perjury.

58.) Under Federal Rules of Criminal Procedure Rule 11, Judge Nottingham was required to tell plaintiff of (b) the right to plead not guilty, (c) the right to a jury trial, (d) the right to be represented by

counsel, (e) the right to confront and cross-examine adverse witnesses, to testify and present evidence, and to compel the attendance of witnesses,  (g) the nature of each charge to which the defendant is pleading, (h) any maximum possible penalty and terms of release, (i) any mandatory minimum penalty....and (m) the court's obligations to apply the sentencing guidelines."

59.)    Even though Judge Nottingham regularly supervises criminal trials, he did not apprise plaintiff of her rights under Rules of Criminal Procedure Rule 11 as required.

60.)    Judge Nottingham did not notify plaintiff of his intent to use evidence as required by Fed. Rules of Criminal Procedure Rule 12.

61.)    The 02-1950 litigation did not result in a final judgment as defined by Colorado State Law because there was no summary judgment and plaintiff had specified a jury trial when she filed her civil complaint and by motion in Jan 2003.  Colorado state law was controlling because 02-1950 was a case under diversity.  Because there was no final judgment, plaintiff has a statutory right to continue to press those claims, since she initiated them within the statute of limitations.  Therefore, there can be no legal finding of res judicata.

Also, the defendants have no recourse to the All Writs Act because there was no final judgment.

62.)    Defendant/defense counsel David Brougham publicly represents that he is an expert on "civil rights".

63.)    In 02-1950, the defense counsel conspired to conduct an illegal defense. They emailed each other and made interstate and local phone calls and used the U.S. Mail. The illegal defense included overt criminal acts such as unrecorded ex parte conferences with the judge(s), solicitation of unrecorded ex parte conferences with the judge, and defense violation of the Federal Rules of Civil Procedure, Federal Rules of Criminal Procedure, Federal Rules of Evidence, and Colorado Procedures for Indirect Contempt (Rule 107)

64.)    Under Fed. Rules of Criminal Procedure Rule 27, plaintiff was entitled to prove that she had not violated the order against pro se litigation based on the same series of events and that there was no valid injunction. However, she was not allowed Rule 27 rights.

65.)    Judge Nottingham denied plaintiff her rights under Rule 29(a) after her statement under oath that she did not believe she had litigated based on the same series of events.

66.)    There was no pre sentence investigation and report as required by Federal Rules of Criminal Procedure Rule 32.

67.)    Judge Nottingham did not advise plaintiff of her right to appeal the conviction as required by Federal Rules of Criminal Procedure Rule 32j1

68.)    The judgment of conviction did not include the adjudication or the sentence as required by Fed. Rules of Crim. Procedure Rule 32k.

69.)    Because the defendants' motions to find plaintiff in contempt of court did not charge an offense, Judge Nottingham was required to arrest judgment by Federal Rules of Criminal Procedure Rule 34.

70.)    Because the defendants were all represented by defense counsel who were licensed lawyers and officers of the court, the defense counsel were obligated to advise plaintiff, knowing that she was pro se, that she had a right to arrest judgment by Rule 34.

71.)    Although about 40% of its inmates are federal detainees, the library at Clear Creek Jail where plaintiff was incarcerated for 4+ months apparently contains not a single copy of the Federal Rules of Criminal Procedure. Plaintiff had repeatedly claimed to the court that she was limited in her ability to defend herself because thru the jail law library, she only had access to American Jurisprudence and the

Colorado Revised Statutes. Furthermore, Christopher Beall threatened to have plaintiff's husband put in jail if he did legal research for her.

72.)    Fed. Rules of Criminal Procedure Rule 41c. allows the seizure of a person under 4 conditions, none of which ever applied to plaintiff.

73.)    Under Fed. Rules of Criminal Procedure Rule 41.3.c, Judge Nottingham was required to put the defense counsel under oath when they requested a warrant for plaintiff's arrest. However, he did not do so.

74.)    The defense counsel knew the basics of criminal procedure as evidenced by their passing the bar examination, which includes it.

75.)    Judge Nottingham also violated the procedures for criminal contempt. By Federal Rules of Criminal Procedure Rule 42, he was required to state the time and place of trial, allow the defendant a reasonable time to prepare a defense, and state the essential facts constituting the charged criminal contempt but he did not do so. He was required to request a government prosecutor but did not do so. Plaintiff was entitled to a jury trial but was specifically told she was not allowed a jury trial. He was required to offer her bail, since she had no criminal record nor any reason to flee.

76.)    Federal Rules of Criminal Procedure Rule 44 says "a defendant who is unable to obtain counsel is entitled to have counsel appointed to represent the defendant at every stage of the proceeding from initial appearance through appeal, unless the defendant waived this right."

77.)    Not only did plaintiff never waive her right to counsel, she filed motions with Judge Nottingham, emailed by the court ECF to the defendants, explaining her attempts to get a lawyer and requesting one by appointed for her.

78.)    "To eliminate unnecessary detention, the court must supervise the detention within the district of any defendants awaiting trial and of any persons held as material witnesses…. An attorney for the government must report biweekly to the court, listing each material witness held in custody for more than 10 days pending indictment, arraignment or trial…the attorney for the government must state why each witness should not be released pending indictment, arraignment or trial".

79.)    Plaintiff was not indicted, arraigned or tried.  She never saw an attorney for the government and no biweekly reports by an attorney for the government were filed.   The defendants knew this because

everything related to the jailing of plaintiff was emailed to them through ECF.

80.)   Judge Nottingham and the defense counsel sought to exclude evidence by denying plaintiff proper oral hearings, proper hearings on her motions, formal replies to her civil court actions and even this reply, and a right to self-representation.

81.)   This violated Federal Rules of Evidence Rule 103.  Plaintiff timely objected and also offered evidence but the court admitted (by relying on) evidence plaintiff had contradicted and excluded evidence she had offered.

82.)   Judge Nottingham refused to take judicial notice as required by Rule 201 (d) and the defense attorneys did not object as they were required to as officers of the court

83.)   The procedure that was used by Judge Nottingham and the defense counsel operating in conspiracy also violated the rules of Colorado the forum state—C.R.S. Colorado Court Rules 107 Remedial and Punitive Standards for Contempt.

84.)   In this case, there were no allegations of direct contempt and the first contempt of court hearing scheduled by Judge Nottingham was the first time he and plaintiff had met, as the judge held no

hearings on plaintiff's summary judgment motions nor defense motions to dismiss.

85.)   In indirect contempt proceedings under Colorado Rule 107c, a bail bond must be set but plaintiff was not allowed the opportunity to bail out at any price.  If bail had been set, more people would have been involved and there would have been more process to protect plaintiff from unlawful imprisonment.

86.)   The safeguards required by Colorado Rule 107 d were also ignored.  "The person shall be told of the right to have the action heard by another judge", but when plaintiff requested another judge before the hearing it was denied without explanation, as was her request for the planned procedure.

87.)   "At the first appearance, the person shall be advised of the right to be represented by an attorney, and, if indigent and if a jail sentence is contemplated, the court will appoint counsel" Rule 107d.

88.)   Rule 107 d was violated—Christopher Beall acting as a private prosecutor, advised plaintiff in front of the Judge, who ratified it, that she did not have a right to an attorney and the judge refused to allow her to ask for one, and later denied specific requests for appointed

counsel. The Federal Public Defenders also refused her service, on the grounds that she was not accused of a crime.

89.)   'The person shall also be advised of the right to plead either guilty or not guilty to the charges, the presumption of innocence, the right to require proof of the charge beyond a reasonable doubt, the right to present witnesses and evidence, the right to cross-examine all adverse witnesses, the right to have subpoenas issued to compel attendance of witnesses at trial, the right to remain silent, the right to testify at trial, and the right to appeal any adverse decision."

90.)   In this case, Christopher Beall, acting as private prosecutor and unsworn witness, stated that plaintiff was not entitled to an evidentiary hearing and the other defense counsel and Judge Nottingham ratified that misstatement of law. Patricia Larson was also made aware of that fraudulent process and ratified it.

91.)   The District Court was specifically required to conduct a full evidentiary hearing and consider plaintiff's evidence that not only was the order invalid but the new litigation was based on new events.

92.)   "The court shall enter an order in writing or on the record describing the means by which the person may purge the contempt and the sanctions that will be in effect until the contempt is purged."

93.)    The means to purge the contempt were described in a very vague fashion not consistent with the requirements for issuing an injunction. This was not corrected, even when plaintiff repeatedly motioned for a description of how to get out of jail. The defense counsel was aware of this deficiency.

94.)    "The power to punish for contempt should be used sparingly, with caution, deliberation, and due regard to constitutional rights; it should be exercised only when necessary to prevent actual, direct obstruction of, or interference with, the administration of justice."

95.)    In this case, due care was not used and plaintiff's constitutional and statutory rights were not considered.

96.)    "Compliance with the procedure governing contempt matters is essential before jurisdiction to punish for contempt attaches"

97.)    A constructive contempt must be brought to the court's attention by affidavit; this affidavit must state facts which, if established, would constitute a contempt, and if it does not do so the court is without jurisdiction to proceed...If the petition and affidavit state facts which if true show that a contempt was committed, the court acquires jurisdiction, otherwise not...Where affidavit fails to state facts showing contempt, court is without jurisdiction. When an affidavit is

presented as a basis of a proceeding for contempt, the court must, in the first instance, examine the same, and, if the facts presented do not show that a contempt has been committed, the court will be without jurisdiction to proceed…The accused can be convicted of no contempt other than that charged in the citation, since the citation for contempt plays a very important role in enabling the person charged to understandingly shape his course and prepare his defense.

98.)    A situation, involving a possible indirect contempt, requires, as a minimum, notice of the charge, the right to be represented by counsel, a hearing, the right to call and confront witnesses, and specific findings by the court.

99.)    Due process is a sham when a judge is both prosecutor and judge in an indirect contempt case.

100.)  Before a court can make a finding of contempt which would justify a remedial order, it must make findings which are supported by evidence that there is a refusal to perform the act in question, that there is a present duty to perform such act …to justify punishment for civil contempt consisting of a refusal to perform a required act for the benefit of others, the trial court must upon hearing make a finding

both of the facts constituting contempt and of the present duty …to perform…

101.) It is error for a judge who cites one for indirect contempt to also act as trial judge and prosecutor in a later hearing on the charge…It is proper to ask a fellow judge to take his place.

102.) A court before imposing penal sanctions for contempt should proceed with caution and deliberation as the power should be exercised only when necessary to prevent obstruction or interference with the administration of justice.

103.) A punitive fine or imprisonment may be imposed only if the citation so states. The document that was sent to plaintiff before the September hearing did not mention jail.

104.) The judges of the District of Colorado believe that lawyers appearing before the court must comply with all of the Colo Rules of Professional Conduct except those related to limited representation of a person.

105.) License to practice law assures public that the lawyer who holds the license will perform basic legal tasks honestly

106.) The public has a right to expect that one who engages in professional misconduct will be disciplined appropriately.... for discipline is required ...to protect the public.

107.) When a lawyer knows that a client expects assistance not permitted by the rules of professional conduct or other law, the lawyer shall consult with the client regarding the relevant limitations on the lawyer's conduct

108.) .) In representing a client, a lawyer shall not engage in conduct that exhibits or is intended to appeal to or engender bias against a person on account of that person's ...socioeconomic status, whether that conduct is directed to ...parties, or any persons involved in the legal process.

109.) Overriding concern in discipline proceedings is to protect the public through the enforcement of professional standards of conduct.

110.) Suspension for one year and one day appropriate when attorney neglected to file response to motion for summary judgment.

111.) In 02-1950, none of the defendants responded to plaintiff's motions for summary judgment with stipulations of fact.

112.) A lawyer employed or retained by an organization represents the organization, which acts through its duly authorized constituents, and the lawyer owes allegiance to the organization itself.

113.) If a lawyer for an organization knows that an officer, employee or other person associated with the organization ...intends to act or refuses to act in a matter related to the representation that is a violation of a legal obligation to the organization, or a violation of law which reasonably might be imputed to the organization, and is likely to result in substantial injury to the organization, the lawyer shall proceed as is reasonably necessary in the best interest of the organization. ...If, despite the lawyer's efforts in accordance with paragraph (b), the highest authority that can act on behalf of the organization insists upon action, or a refusal to act, that is clearly a violation of law ...the lawyer may resign.

114.) A lawyer ordinarily must decline or withdraw from representation if the client demands that the lawyer engage in conduct that is illegal or violates the Rules of Professional Conduct or other law...Withdrawal is also justified if the client persists in a course of action that the lawyer reasonably believes is criminal or fraudulent,

for a lawyer is not required to be associated with such conduct even if the lawyer does not further it.

115.)  Each member of our society is entitled to have his or her conduct judged and regulated in accordance with the law; to seek any lawful objective through legally permissible means; and to present for adjudication any lawful claim, issue or defense.

116.)  The advocate has...a duty not to abuse legal procedure.

117.)  The action is frivolous if the client desires to have the action taken primarily for the purpose of harassing or maliciously injuring a person.

118.)  Attorney's effort to cause suppression of relevant evidence ...in a manner not authorized by statute o other law constitutes conduct prejudicial to administration of justice.

119.)  As officers of the court, the defense lawyer were charged with obedience to the laws of Colorado and to the laws of the United States, and intentional violation by them of these laws subjects them to the severest discipline.

120.)  It is unprofessional conduct and dishonorable to deal other than candidly with the facts in drawing affidavits and other documents.

121.)  By filing false documents, an attorney perpetrates a fraud upon the court.

122.)  The public has a right to expect that one who engages in professional misconduct will be disciplined appropriately.

123.)  An attorney has a high duty as an officer of the court to never participate in any scheme to obstruct the administration of justice or the judicial process.

124.)  Fabricating documents to justify conduct breaches attorney's ethical obligations to his client and to the bar.

125.)  Recommendation of prosecution without legitimate interest warrants suspension.

126.)  Where an attorney took advantage of his position of respect …by repeatedly urging criminal prosecution in matters where his only legitimate professional interest could be in related civil matters, such actions are prejudicial to the administration of justice.

127.)  Where a lawyer's conduct not only constitutes a violation of the code of professional responsibility, but also involves felonious conduct, clearly and convincingly proven …the grievance committee is justified in requiring disbarment.

128.) If a lawyer has offered material evidence and later learns that the evidence is false, the lawyer shall take reasonable remedial measures.

129.) Patricia Larson offered evidence that there was a valid injunction when she knew there was not but took no remedial action.

130.) A lawyer shall not...knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.

131.) A lawyer shall not: (a) unlawfully obstruct another party's access to evidence...in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused.

132.) A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if: the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved.

133.) A lawyer having knowledge that another lawyer has committed a violation of the Rules of Professional Conduct that raises a

substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects shall inform the appropriate professional authority.

134.) A lawyer having knowledge that a judge has committed a violation of applicable rules of judicial conduct that raises a substantial question as to the judge's fitness for office shall inform the appropriate authority.

135.) Our legal system is based on an adversary system that has three elements: (1) the right of parties to present evidence to a judge and a jury (2) the need for the judge and jury to be 'neutral and passive' (deciding only on the basis of the parties' evidence) and (3) the use of procedural rules and professional codes of conduct to govern the collection, presentation, and testing of such evidence.

136.) The very essence of civil liberty certainly consists in the right of every individual to claim the protections of the laws, whenever he receives an injury.

137.) The largest latitude consistent with the words employed is uniformly given in construing such statutes and constitutional provisions as are meant to protect and defend and give remedies for their wrongs to all the people.

138.)  Courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character; and right and justice should be administered without sale, denial or delay

139.)  The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: (a) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;(b) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent; (c) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;(d) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights,

140.) 'The Constitution of the United States is a law for rulers and people, equally in war and in peace, and covers with the shield of its protection all classes of men, at all times, and under all circumstances

141.) In the determination of any criminal charge against him, or of his rights and obligations in a suit at law, everyone shall be entitled to a fair and public hearing by a competent, independent and impartial tribunal established by law.

142.) Everyone lawfully within the territory of a State shall, within that territory, have the right to liberty of movement and freedom to choose his residence...The above-mentioned rights shall not be subject to any restrictions except those which are provided by law, are necessary to protect national security, public order ...public health or morals or the rights and freedoms of others, and are consistent with the other rights recognized in the present (U.N.) Covenant.

143.) No one shall be deprived of his liberty except on such grounds and in accordance with such procedure as are established by law.

144.) No free man shall be seized or imprisoned, or stripped of his rights or possessions, or outlawed or exiled, or deprived of his standing in any other way, nor will we proceed with force against him,

or send others to do so, except by the lawful judgment of his equals or by the law of the land.

145.)  The articles broadcast by the defendants imply that plaintiff is guilty of crime and moral turpitude.  Thus they violate plaintiff's right to presumption of innocence and protection of her reputation and are criminal under Kansas and Colorado law.

146.)  U.S.C., Title 18, Section 242 Deprivation of Rights Under Color of Law ...makes it a crime for any person acting under color of law, statute, ordinance, regulation, or custom to willfully deprive or cause to be deprived from any person those rights, privileges, or immunities secured or protected by the Constitution and laws of the U.S...Acts under "color of any law" include acts not only done by federal, state, or local officials within the bounds or limits of their lawful authority, but also acts done without and beyond the bounds of their lawful authority; provided that, in order for unlawful acts of any official to be done under "color of any law," the unlawful acts must be done while such official is purporting or pretending to act in the performance of his/her official duties. This definition includes, in addition to law enforcement officials, individuals such as... Judges.... etc., persons who are bound by laws, statutes ordinances, or customs."

34

147.)  With criminal intention to defraud rights, the defense counsel asks the 10th Circuit to affirm threats to fine and imprison plaintiff for acts that are not criminal and in fact are expressly legal.

148.)  The defense in September 2005 requested Judge Nottingham jail plaintiff for performing a legal act.

149.)  The defendants confessed to a felony when they submitted a verified bill for an unrecorded ex parte conference call with Magistrate Schlatter and billed to review orders they could only have received through ex parte conferences.

150.)  The conspiracy by the defense and the judges match the definition of "obstruction of justice" for which Congress has specifically granted a right to sue.

151.)  Unrecorded, ex parte telephone conferences between the defense counsel and the judge clearly fall into the category of "corruptly endeavoring to influence an officer of the court". So do letters requesting such conversations such as sent by Patricia Larson to Judge Nottingham.

152.)  Whoever knowingly engages in any conduct and thereby causes bodily injury to another person or damages the tangible property of another person, or threatens to do so, with intent to retaliate against

35

any person for (1) the attendance of a… party at an official proceeding…shall be fined or imprisoned.

153.)  The defense counsel threatened and damaged the plaintiff and her husband to retaliate against their attendance at official proceedings in courts other than that of Judge Nottingham.

154.)  The defendants have criminally deprived plaintiff of rights established by statute as well as common law and constitution.  They intentionally damaged her reputation and finances and had her jailed without the required process or even a belief that she had committed a criminal act. The next step in criminal acts is murder or violence and they refuse to say that they are not planning that.

155.)  Plaintiff is entitled to the protection of the laws against criminal acts and professional misconduct by the defendants and their counsel.

156.)  The defense counsel greatly violated The Rules of Professional Conduct.

157.)  The defense counsel engaged in a criminal conspiracy designed to deprive plaintiff of rights and they violated U.S. criminal statutes.

Verification: To the best of my knowledge and belief all of the above are true under penalty of perjury.

*Kay Sieverding*

S./ Kay Sieverding, 641 Basswood Ave., Verona, WI 53593, 608-848-5721.

I efiled this on 7/29/06 these facts establish need for DC to adjudicate.



United States Court of Appeals
For the 10th Circuit

Sieverding et al.

Appellants

v.

Colorado Bar Association et al.

Appellees

Case # 04-1108, 04-1143, 04-1152

District Case (Colo)

Case # 02-N-1950 (OES)

**ORDERED**

THIS MATTER WILL BE REFERRED TO THE PANEL ASSIGNED TO DISPOSE OF THE CASE ON THE MERITS.

(DEPUTY) CLERK          6/8/04          DATE

Motion for sanctions on the defense counsel for telling the court of appeals that the opening briefs are "often in entirely incomprehensible prose" but not asking for clarification.

On Friday 6/04/03 plaintiff/appellant Kay Sieverding called every single defense attorney. Brougham hung up on her. Beall talked with her but didn't mention any questions concerning the meaning of the appellants' briefs. Sieverding left polite messages asking for a return phone call from the other defense counsel and not one called her. The following Monday, late in the day, appellees filed a motion in the 10th Circuit claiming that the opening briefs are "often in entirely incomprehensible prose". They never in any way asked for clarification. Plaintiffs'/appellants tried

1



# COLORADO COMMISSION ON JUDICIAL DISCIPLINE

899 Logan Street, Suite 307
Denver, Colorado 80203
(303) 894-2110

December 28, 2005

Kay Sieverding
P.O. Box 518
Georgetown, Colorado  80446

**C O N F I D E N T I A L**

Dear Ms. Sieverding:

This letter confirms receipt of your letter, dated December 24, 2005, detailing your complaint.

The Commission on Judicial Discipline reviews complaints about ethical conduct by state judges.  However, because it is not a court, it does not have any authority to review legal or factual aspects of a person's case.  It also does not have the authority to review the rulings, orders or decisions that a judge may make when presiding over a person's case.  All of those matters can be reviewed only through the appellate process.

I would recommend that you obtain an attorney's advice on how you might proceed at this point in time.  I am sorry, but after reviewing your letter that you have presented and arguments that you have made, the issues that you have raised do not fall within the original jurisdiction or authority of this Commission.  Your course of action at this point in time would be to work with an attorney to determine if you have any appellate avenues available to you concerning the issues that you have raised in your letter of complaint.  I would invite you to share this letter with your attorney and, if she or he has questions, I would invite her or him to call me in Denver at (303) 894-2110.  Complaints about attorneys are addressed by the Colorado Attorney Regulation Counsel office, 1560 Broadway, Suite 1800, Denver, Colorado  80202  (phone:  (303) 866-6400).

Please be reminded that this matter is strictly confidential pursuant to Article VI, Section 23(3)(g), Colorado Constitution, and sections 24-72-401 and 402, Colorado Revised Statutes.  Thank you for your consideration.

Sincerely,

Richard A. Wehmhoefer
Executive Director and General Counsel
RAW/



U.S. Court District of Colorado

**F I L E D**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**JUL 1 7 2006**

**GREGORY C. LANGHAM**
CLERK

Sieverding                                    02-cv-1950

v.

Colorado Bar Association                      Judge Nottingham

---

Request that the defense associates cease publishing about plaintiff on the Internet.

Judge Nottingham has no jurisdiction over plaintiff because 02-cv-1950 was

dismissed without a decision on the merits or a settlement. However, this is the only way

that plaintiff knows to ask the defense counsel to stop having their associates quote

defamatory and/or misleading remarks by Judge Nottingham.

Judge Nottingham described plaintiff's complaint in the presence of the press as

"gibberish", a comment, which has been repeated by various insurance affiliated Internet

"bloggs" even in July 2006. One of these is the Colorado Civil Justice League. Their

publication today about the plaintiff is attached.

Congress has provided a remedy for unclear writing in complaints. It is

"Rule 12(e) Motion For More Definite Statement.

"If a pleading to which a responsive pleading is permitted is so vague or ambiguous
that a party cannot reasonably be required to frame a responsive pleading, the party may
move for a more definite statement before interposing a responsive pleading. The motion
shall point out the defects complained of and the details desired. If the motion is granted
and the order of the court is not obeyed within 10 days after notice of the order or within
such other time as the court may fix, the court may strike the pleading to which the
motion was directed or make such order as it deems just."

In this case, only one defendant filed one such motion, in the spring of 2003. The

extra detail requested was promptly supplied.

1

Everything that Judge Nottingham says about this litigation is suspect because he refused his statutory obligation to hold hearings on plaintiffs' motion for summary judgment or defendants' motion to dismiss for failure to state a claim. Also the defense submitted more than 20 bills for criminal unrecorded ex parte conferences with the court. A sample of these is attached. Furthermore, two of the defense counsel wrote directly to Judge Nottingham and solicited ex parte telephone calls and the judge did not tell them to cease solicitation of ex parte contact.

Plaintiff's effective complaint is attached so that an independent reader can independently judge whether it is "gibberish" or not.

The only explanation that Judge Nottingham has offered for dismissing plaintiff's case besides his claims that it is "prolix, disorganized and legally twisted" is preceding related filings in state court. Those had no claims preclusion effect because they were abandoned by plaintiff unserved and therefore did not lead to a "decision on the merits". See SEMTEK INT'L INC. V.LOCKHEED MARTIN CORP., U.S. Supreme Court (99-1551) 531 U.S. 497 (2001) 128 Md. App. 39, 736 A. 2d 1104. Furthermore, Rule 12 says that a res judicata requires a formal Reply with stipulations to facts and the defense did not do that. Congress specified that defendants could not defend with res judicata as a motion.

The defense did not dispute any of the facts in plaintiff's complaint, attached, or motions for summary judgment. They just wrote vague motions many of which actually misquoted laws. Just recently, plaintiff has been involved in pleading in the 10th Circuit Court of Appeals for recognition of her rights to self-representation, as guaranteed by the Judiciary Act of 1989, U.S.C. Title 28 section 1654, the Colorado constitution and the

Wisconsin constitution. Judge Nottingham removed those rights without a law or a

hearing and jailed plaintiff without even accusing her of violating a law or allowing her

to cross-examine her accusers.

. As explained by the 11th Circuit:

"An injunction forbidding the performance of a particular act must be based on a
conclusion that the act forbidden, if performed, would constitute a violation of the law.
Otherwise, the court would be enjoining the performance of a perfectly legal act, which
the court is without authority to do…If the court imposes punitive sanctions, it will
effectively have made criminal conduct that Congress has not deemed criminal…
        even if Congress had done so, the enforcement of the criminal law would be a
matter for the executive branch, not the judicial branch…
        an injunction enforceable only through punitive or compensatory sanctions
constitutes an individual criminal or civil law….
        when a party seeks an injunction to criminal and/or civil liability via the court's
contempt powers…that party is using the legal device of an injunction for a purpose for
which it was not designed…
        If the injunction cannot be enforced using coercive sanctions, then it should not be
entered…The injunction is an important remedial tool, but also one which has been
greatly abused.
        By using an injunction as an alternate means of creating criminal and/or civil
liability, courts ignore fundamental equitable and constitutional principles" Concurring
opinion" Chandler v. James, 11th Circuit Court of Appeals No. 97-6898, 6895, 7/13/99

        The Supreme Court recently ratified the Magna Charta, saying

        ""no free man should be imprisoned, dispossessed, outlawed, or exiled save by
the judgment of his peers or by the law of the land" ASUL V. BUSH ( 03-334) 542 U.S.
466 (2004) 321 F.3d 1134

        The Colorado Civil Justice League is apparently associated with defense attorney

David Brougham. As the attached shows, he is one of the lawyers who had criminal ex

parte unrecorded conference calls with the judge. The Colorado Civil Justice League is

also apparently associated with CIRSA, the Colorado Intergovernmental Risk Sharing

"Agency". Recently, plaintiff included the following in her opening brief in the 10th

Circuit Court of Appeals 06-1038. The defense did not dispute the following and have

accepted it as true:

"There is at least a substantial possibility that drug related corruption or bribery
was behind this gross violation of due process because a.) The defendant who started
most of the events, Kevin Bennett, is as undisputed a convicted cocaine dealer and long
time cocaine user. b.) The DEA identified Steamboat as a high use area c.) The Rocky
Mountain News describes the cocaine industry of nearby Aspen as being very large and
accepted by many local politicians and the sheriff. d.) One of the underlying actors,
disgraced Colorado Judge Joel Thompson, was accused by the DEA of living with and
being engaged to a cocaine importer. e.) Plaintiff was told by a former Steamboat police
officer that he quit the force because of police sale of drug related evidence. f.) Plaintiff
was told by a lawyer she had employed in Steamboat, (Sandra Gardner) that she
suspected that the police sold drug evidence g.) As the previous quote shows, as well as
studies by the General Accounting Office and other national news, drug related
corruption is a problem in many areas.

It is also possible that someone related to CIRSA or Lloyd's of London paid a
bribe. They were the parties who paid David Brougham, one of the defense lawyers
involved with the ex parte unrecorded conference call with Magistrate Schlatter. Lloyd's
apparently is a re-insurer of public officials errors and omissions insurance sold to the
City of Steamboat by CIRSA (Colorado Intergovernmental Risk Sharing "Agency")

CIRSA was "audited" by KPMG, which has been accused of criminal conspiracy
in connection with tax fraud. CIRSA apparently does not file with the IRS, even the
special forms for tax-exempt entities. Plaintiff checked with the Colorado Secretary of
State and other Colorado state agencies but could find no record of CIRSA being listed as
a government agency, government, corporation, partnership, limited partnership, or
charity. David Brougham told plaintiff that he was unwilling to tell her CIRSA's form of
organization. Plaintiff repeatedly tried but was unable to obtain CIRSA's public officials
errors and omissions insurance "claim handling procedures". A report about another
property insurance company she found had great detail about its contract with its
reinsurance company, a source of concern to the auditor, but CIRSA apparently has
several reinsurance companies and does not divulge the details of the arrangements.
Other audits plaintiff has seen discuss the form of organization, shareholder meetings and
elections, etc. but CIRSA apparently keeps that information secret, including the names
of its directors. Other organizations plaintiff has seen usually seek special knowledge in
their directors, but CIRSA's directors are apparently all part time city council members
from small rural cities. There is only one employee named in the "audit" plaintiff was
able to obtain after multiple Freedom of Information Act requests—Tim Greer—the only
director the organization has ever had. His compensation is not divulged. Apparently he
receives compensation from the re-insurers as well as CIRSA directly. The
organization's litigation is not evaluated in their "audit" by any party other than Greer.
Their "audit" is the only one plaintiff has ever seen that does not list the names of the
individuals performing the "audit". Other organization's audits have listed the
individuals and included detailed discussions of their credentials. She contacted KPMG
and CIRSA and asked for more information but was refused. When plaintiff did manage

4

to get a CIRSA employee on the phone (Mike Wagoner) and asked him about the status of her claim; he found it on their computer system but then said he had been "told" to "hang up" on her. For these reasons, plaintiff believes it is possible that CIRSA or Lloyd's bribed Magistrate Schlatter." (p.45-46)

The article associated with the defense states "her pro se lawsuits...involved a controversy with a neighbor and the city of Steamboat Springs." After having an unrecorded conference call with David Brougham, who was paid by the City of Steamboat, CIRSA, and Lloyd's of London, Magistrate Schlatter wrote in his report, which served as a basis for further court decisions:

""The claims against the Bennetts read like the table of contents for a hornbook on torts. Virtually every tort imaginable has been listed against the Bennetts for their various actions during the dispute that began in 1991 and nothing would be served by listing those torts here. Just the titles of the various torts alleged ramble on for almost two pages". (report and recommendation page 7).

Plaintiffs' claims on the Bennetts involved extortion, conspiracy to deny rights, defamation, abuse of process, and malicious prosecution. Defense counsel city attorney Anthony Lettunich described them in one of his bills as "very serious allegations". In fact, plaintiff accused various defendants of felonies. So lacking any other defense, they apparently decided to accuse plaintiff of being a bad writer. However, the quality of her writing is irrelevant in a proper judicial proceeding. Their back up defense is that plaintiff is not a lawyer. That is also true of some 38,000 other plaintiffs currently in the federal courts system.

Plaintiff requests that the defendants take this and similar articles off the Internet.

Kay
Kay Sieverding


641 Basswood Ave., Verona, WI 53593

5